Filed 10/1/13

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H038082 |
| Plaintiff and Respondent, | (San Benito County Super. Ct. Nos. CR-11-01306 and CR-11-01572) |
| v. | |
| MATHEW JAMES JACOBS, | |
| Defendant and Appellant. | |

Pursuant to a plea bargain, Mathew James Jacobs pleaded no contest to forcible rape (Pen. Code, § 261, subd. (a)(2))[1] and admitted a sentence enhancement allegation pursuant to section 12022.8 in Case No. CR-11-01306 and pleaded no contest to unlawful sexual intercourse with a minor more than three years younger than him (§ 261.5, subd. (c)) in Case No. CR-11-01572. On appeal, defendant Jacobs raises an ineffective assistance claim with respect to defense counsel's failure to argue for a lesser sentence within the agreed range and asserts that he is entitled to additional presentence credits for time served.[2]

---

[1] All further statutory references are to the Penal Code.

[2] Section 1237.1 provides: "No appeal shall be taken by the defendant from a judgment of conviction on the ground of an error in the calculation of presentence custody credits, unless the defendant first presents the claim in the trial court at the time of sentencing, or if the error is not discovered until after sentencing, the defendant first makes a motion for correction of the record in the trial court." We reach the issue of presentence custody credit, however, because it is not the only issue on appeal. (See *People v. Acosta* (1996) 48 Cal.App.4th 411, 420-428.)

1

We reject the ineffective assistance claim but we find errors in the calculation of presentence credit. Accordingly, we modify the judgments and affirm them as modified.

I

PROCEDURAL HISTORY

Defendant was arrested on July 22, 2011. The record reflects that bail in the amount of $50,000 was posted on defendant's behalf by Luna Bail Bonds on July 23, 2011.

On August 15, 2011, a complaint was filed in Case No. CR-11-01306. It alleged that defendant had committed forcible rape in violation of section 261, subdivision (a)(2), on or about July 21, 2011. It further alleged that defendant had inflicted great bodily harm upon the victim within the meaning of section 12022.8.

Defendant was arraigned on August 16, 2011. The minute order indicates a bond and specifies that defendant waived time and entered pleas of not guilty.

Defendant was arrested on unrelated charges on September 17, 2011.

On September 20, 2011, a complaint was filed in Case No. CR-11-01572. It alleged that defendant had committed five offenses against one victim: forcible rape on or about July 8, 2011 (§ 261, subd. (a)(1)) (count one), sexual penetration by a foreign object on or about July 8, 2011 (§ 289, subd. (a)(1)) (count two), contact with a minor for sexual offense on or about June 30, 2011 (§ 288.3, subd. (a)) (count three), and annoying telephone calls on or about July 10, 2011 (§ 653m, subd. (a)) (count four). The complaint also contained special allegations with respect to counts one and two.

Defendant was arraigned the same day. Defendant waived time and entered pleas of not guilty.

The September 27, 2011 minute order in Case No. CR-11-01306 reflects that defendant was "released on bail posted." The September 27, 2011 minute order in Case No. CR-11-01572 indicates that defendant was in custody and bail was set at $200,000 in that case.

2

On October 18, 2011 in Case No. CR-11-01306, the matter was continued on defendant's motion. The October 18, 2011 minute order in Case No. CR-11-01306 reflects a bond. The next hearing was set for November 15, 2011.

The October 18, 2011 minute order in Case No. CR-11-01572 reflects that defendant was in custody and bail was set at $200,000. The next hearing was set for November 15, 2011.

On November 15, 2011 in Case Nos. CR-11-01306 and CR-11-01572, the next hearing dates were scheduled. The preliminary examinations in those cases were set for December 19, 2011. The November 15, 2011 minute order in Case No. CR-11-01306 reflects that defendant was released in that case and "in custody on other charges." The November 15, 2011 minute order in Case No. CR-11-01572 reflects that defendant was in custody and bail was set at $200,000.

On November 29, 2011, the court rescheduled the preliminary examinations for January 9, 2012 and set the next hearing date for January 3, 2012 in Case Nos. CR-11-01306 and CR-11-01572. The November 29, 2011 minute order in Case No. CR-11-01306 reflects that defendant was "released on bail posted" in that case and "in custody on other charges." The November 29, 2011 minute order in Case No. CR-11-01572 reflects that defendant was in custody and bail was set at $200,000.

On January 3, 2012, the January 9, 2012 date for the preliminary examinations was confirmed in Case Nos. CR-11-01306 and CR-11-01572. The January 3, 2012 minute order in Case No. CR-11-01306 reflects that defendant was released in that case and "in custody on other charges." The January 3, 2012 minute order in Case No. CR-11-01572 reflects that defendant was in custody and bail was set at $200,000.

On January 9, 2012, on motion of the People and pursuant to a plea bargain involving both cases, the court added a fifth count in Case No. CR-11-01572 that charged defendant with committing a felony violation of section 261.5, subdivision (c), on July 8, 2011. The agreed sentencing range was eight years, eight months to 11 years. The court

3

informed defendant that the maximum term based on the anticipated pleas and admissions under the bargain would have been 13 years, eight months. Defense counsel later noted that defendant would have been facing a maximum term of 29 years, eight months for the offenses as charged. The court advised defendant that he would be required to register with law enforcement for life.

In Case No. CR-11-01306, defendant pleaded no contest to committing a forcible rape in violation of section 261, subdivision (a)(2), on July 21, 2011 (count one) and admitted the enhancement allegation of great bodily injury within the meaning of section 12022.8. In Case No. CR-11-01572, defendant pleaded no contest to unlawful sexual intercourse in violation of section 261.5, subdivision (c), on July 8, 2011. The trial court referred the matters to the probation department for presentencing reports.

The record reflects that on January 9, 2012, the court ordered the bond "exonerated" and placed a "body only hold" on defendant in Case No. CR-11-01306. The court also granted defendant an "OR release" (own recognizance) in Case No. CR-11-01572. The January 9, 2012 minute order in Case No. CR-11-01306 states "body only" as to bail. The January 9, 2012 minute order in Case No. CR-11-01572 states that defendant is "released on O.R." and "in custody on other charges."

The presentencing probation reports recommended that the court impose a total term of 11 years in state prison. A Static-99R assessment that placed defendant in the moderate-high risk category was attached to the reports.

The probation report for Case No. CR-11-01306 indicated that defendant was in San Benito County jail from July 22, 2011 (date of arrest for conduct leading to charges in that case) to July 23, 2011 (bond posted) and January 10, 2012 (the day after bond exonerated and "body only hold" imposed) to February 16, 2012 (the date of sentencing). It calculated that defendant had served 40 actual days and he was entitled to six days of conduct credit under the 15 percent limitation imposed by section 2933.1, for total presentence credit of 46 days.

4

The probation report for Case No. CR-11-01572 indicated that defendant was in San Benito County jail from September 17, 2011 (the date of arrest for conduct leading to charges in that case) to January 9, 2012 (the date of O.R. release in that case after pleading). It calculated that defendant had served 115 actual days and he was entitled to 56 days of conduct credit, for total presentence credit of 171 days.

The sentencing hearing was held on February 16, 2012. The prosecutor urged the court to follow the recommendation of the probation reports and impose a total term of 11 years. The prosecutor argued that defendant had "lured his victims through means of communications: texting, Facebook" and defendant had physically injured the victim of the forcible rape. Defense counsel stated, "I think the offer and the indicated was 11 years, your Honor." He indicated that was "our discussion" and "that's the reason he pled."

The court imposed the middle term of six years for forcible rape and added an additional five years pursuant to section 12022.8, for a total sentence of 11 years in Case No. CR-11-01306. In Case No. CR-11-01572, the court imposed a middle term of two years for unlawful sexual intercourse and ordered the sentence to be served concurrently. As to presentence credit, the court awarded credits consistent with the probation reports' calculations. The court ordered defendant to register pursuant to section 290.

II

DISCUSSION

A. *Alleged Ineffective Assistance of Counsel*

Defendant now argues that his counsel's failure to argue for the minimum sentence within the plea-bargained range constituted ineffective assistance of counsel under *Strickland v. Washington* (1984) 466 U.S. 668 [104 S.Ct. 2052] (*Strickland*).

A defendant claiming ineffective assistance of counsel must satisfy *Strickland*'s two-part test requiring a showing of counsel's deficient performance and prejudice. (*Id*. at p. 687.) As to deficient performance, a defendant "must show that counsel's

5

representation fell below an objective standard of reasonableness" measured against "prevailing professional norms." (*Id*. at p. 688.) "Judicial scrutiny of counsel's performance must be highly deferential," a court must evaluate counsel's performance "from counsel's perspective at the time" without the "the distorting effects of hindsight," and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." (*Id*. at p. 689.)

The prejudice prong requires a defendant to establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Id*. at p. 694.) "A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Ibid*.) "In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. [Citations.] Instead, *Strickland* asks whether it is 'reasonably likely' the result would have been different. [Citation.] This does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.' [Citation.] The likelihood of a different result must be substantial, not just conceivable. [Citation.]" (*Harrington v. Richter* (2011) ___ U.S. ___, ___ [131 S.Ct. 770, 791-792].)

"[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." (*Id*. at p. 697.)

Defendant first points out that he was a 21 year old at the time of the offenses and he had no criminal record. These circumstances were reflected in the probation reports. He also mentions as circumstances in mitigation his accomplishments with respect to education and independence in the face of difficulties involving his family, citing to a

letter attached to a probation report. The probation reports detail his education and employment. At the time of sentencing, the court indicated that it had read and reviewed the probation reports. (See § 1170, subd.(b).)

Defendant maintains that "defense counsel's failure to urge and argue the case for the minimum sentence in the indicated range undermines confidence in the outcome of the sentencing proceeding" and establishes his claim. The probation reports specified that on separate occasions defendant forced two female victims to have sexual intercourse. The victims were 18 years old and 16 years old. Defendant connected with his victims through Facebook or MyYearbook, social networking sites, and then met them in person. He brought them to his residence where the incidents occurred. Defendant has not identified any mitigating circumstances of which the court was unaware or which would have reasonably supported sentencing him to the lower, rather than the middle, term for forcible rape. He has not shown by reference to the record that there is a reasonable probability that the result of the sentencing hearing would have been different if defense counsel had highlighted the referenced letter and argued for the lower term. (See *Strickland*, *supra*, 466 U.S. at p. 694.)

Defendant refers us to *People v. Cropper* (1979) 89 Cal.App.3d 716, a case in which defense counsel failed to adequately advocate for his client at sentencing. This authority predates *Strickland* and did not apply the *Strickland* standard of ineffective assistance.

Defendant's brief also contains a "see also" citation to *United States v. Cronic* (1984) 466 U.S. 648 [104 S.Ct. 2039] (*Cronic*) when discussing *Cropper*. *Cronic* recognized three categories of cases that constitute per se violations of the Sixth Amendment right to counsel with respect to which prejudice is presumed: (1) "the complete denial of counsel" (*id*. at p. 659) at a critical stage of trial, (2) counsel's failure "to subject the prosecution's case to meaningful adversarial testing" (*ibid*.), and (3) "the likelihood that any lawyer, even a fully competent one, could provide effective assistance

7

is so small [under the particular circumstances] that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial." (*Id*. at pp. 659-660.) Defendant has not explicitly argued that this case is governed by *Cronic*. Accordingly, we conclude that he is not advancing such claim and any such contention is deemed waived. " '[E]very brief should contain a legal argument with citation of authorities on the points made. If none is furnished on a particular point, the court may treat it as waived, and pass it without consideration. [Citations.]' [Citations.]" (*People v. Stanley* (1995) 10 Cal.4th 764, 793.)

In any case, the *Strickland* standard applies to the alleged deficient performance of defense counsel at the sentencing hearing. (Cf. *Bell v. Cone* (2002) 535 U.S. 685, 697-698 [122 S.Ct. 1843] [*Strickland*, not *Cronic*, governed analysis of claim that defense counsel had rendered ineffective assistance at the capital sentencing hearing because "[t]he aspects of counsel's performance challenged by respondent—the failure to adduce mitigating evidence and the waiver of closing argument—are plainly of the same ilk as other specific attorney errors we have held subject to *Strickland*'s performance and prejudice components"].) We reject defendant's ineffective assistance claim since we have found no reasonable probability that, but for trial counsel's alleged failings at the sentencing hearing, the court would have imposed a lesser sentence.

B. *Presentence Credits*

1. *Basic Law*

"Persons who remain in custody prior to sentencing receive credit against their prison terms for all of those days spent in custody prior to sentencing, so long as the presentence custody is attributable to the conduct that led to the conviction. (§ 2900.5.) This form of credit ordinarily is referred to as credit for time served. [¶] Additional credit may be earned, based upon the defendant's work and good conduct during presentence incarceration. (§§ 2900.5, subd. (a), 4019.) Such presentence credit is

8

referred to as conduct credit. (See *People v. Cooper* (2002) 27 Cal.4th 38, 40.)" (*People v. Duff* (2010) 50 Cal.4th 787, 793.)

Section 2900.5, subdivision (a), states in pertinent part and effectively stated at all pertinent times: "In all felony and misdemeanor convictions . . . , when the defendant has been in custody, including, but not limited to, any time spent in a jail . . . , all days of custody of the defendant, including days . . . credited to the period of confinement pursuant to Section 4019 . . . , shall be credited upon his or her term of imprisonment . . . ." (Stats. 2011, ch. 15, § 466, p. 480, eff. April 4, 2011, operative Oct. 1, 2011, see Stats.1998, ch. 338, § 6, pp. 2718-2719, eff. Aug. 21, 1998, operative Jan. 1, 1999; see also Stats. 2011, ch. 15, § 636, p. 622; Stats. 2011, ch. 40, § 3, p. 1748, eff. June 30, 2011.) A partial day spent in county jail is counted as a day of custody for which a defendant is entitled to credit. (*People v. King* (1992) 3 Cal.App.4th 882, 886; *People v. Smith* (1989) 211 Cal.App.3d 523, 526.)

Section 2900.5, subdivision (b), provides and at all relevant times provided: "For the purposes of this section, credit shall be given only where the custody to be credited is attributable to proceedings related to the same conduct for which the defendant has been convicted. Credit shall be given only once for a single period of custody attributable to multiple offenses for which a consecutive sentence is imposed."[3] (Stats. 2011, ch. 15, § 466, pp. 480-481, eff. April 4, 2011, operative Oct. 1, 2011; Stats.1998, ch. 338, § 6, pp. 2718-2719, eff. Aug. 21, 1998, operative Jan. 1, 1999; see Stats. 2011, ch. 15, § 636,

---

[3]     From its inception, predecessor section 2900.5 contained very similar language to the first sentence of section 2900.5, subdivision (b). (Stats. 1971, ch. 1732, § 2, p. 3686 [former § 2900.5, subd. (b)].) As amended in 1976, it contained the identical language now found in the first sentence of section 2900.5, subdivision (b). (Stats. 1976, ch. 1045, § 2, p. 4666 [former § 2900.5, subd. (b)].) In 1978, the predecessor section was amended to add the identical language now found in the second sentence of section 2900.5, subdivision (b). (Stats. 1978, ch. 304, § 1, p. 632 [former § 2900.5, subd. (b)].)

p. 622; Stats. 2011, ch. 40, § 3, p. 1748, eff. June 30, 2011; Stats. 2011, ch. 40, § 3, p. 1748, eff. June 30, 2011.)

Effective September 28, 2010, the Legislature amended section 4019 and section 2933. (Stats. 2010, ch 426, §§ 1, 2, pp. 2087-2088.) As then amended, section 2933 provided for enhanced presentence conduct credit in certain circumstances. (Stats. 2010, ch. 426, § 1, p. 2987 [former § 2933, subd. (e)].) Section 2933 was subsequently amended to eliminate its presentence conduct credit provisions. (See Stats. 2011-2012, 1st Ex. Sess., ch. 12, § 16, p. 5963, eff. Sept. 21, 2011 and operative Oct. 1, 2011].) Section 4019 was subsequently amended multiple times but section 4019 as amended in 2011 did not become operative until October 1, 2011. (See Stats. 2011, ch. 15, § 482, p. 498, eff. April 4, 2011, operative Oct. 1, 2011; Stats. 2011, ch. 39, § 53, p. 1731, eff. June 30, 2011, operative Oct. 1, 2011; Stats. 2011-2012, 1st Ex. Sess., ch. 12, § 35, p. 5977, eff. Sept. 21, 2011, operative Oct. 1, 2011.)

The current version of section 4019 went into effect on September 21, 2011 and became operative October 1, 2011. (Stats. 2011-2012, 1st Ex. Sess., ch. 12, §§ 35, 47, pp. 5976-5977, 5981.) It applies to crimes committed on or after October 1, 2011: "The changes to this section enacted by the act that added this subdivision shall apply prospectively and shall apply to prisoners who are confined to a county jail . . . for a crime committed on or after October 1, 2011. Any days earned by a prisoner prior to October 1, 2011, shall be calculated at the rate required by the prior law." (§ 4019, subd. (h).)

Section 2933.1 subdivision (c), however, limits presentence conduct credit "[n]otwithstanding Section 4019 or any other provision of law" to "15 percent of the actual period of confinement" where a defendant is convicted of a felony offense listed in subdivision (c) of Section 667.5. It appears undisputed that defendant was convicted of a violent felony within the meaning of section 667.5, subdivision (c), under the law as it existed at the time of defendant's offenses and under current law. (See § 667.5,

10

subds. (c)(3) [includes rape in violation of § 261, subd. (a)(2)] & (c)(8) [includes any felony in which a sentence enhancement for great bodily harm is pleaded and proved pursuant to section 12022.8]; Prop. 83, § 9, approved Nov. 7, 2006, eff. Nov. 8, 2006 [former 667.5, subds. (c)(3) & (c)(8)].)

2. *Credit for Actual Time Spent in Presentence Custody*

a. *Governing Legal Principles*

The California Supreme Court has recognized that "there is no simple or universal formula to solve all presentence credit issues" but the "aim is to provide for section 2900.5 a construction which is faithful to its language, which produces fair and reasonable results in a majority of cases, and which can be readily understood and applied by trial courts." (*In re Joyner* (1989) 48 Cal.3d 487, 495 (*Joyner*), accord *People v. Bruner* (1995) 9 Cal.4th 1178, 1195 (*Bruner*).) "As with many determinations of credit, a seemingly simple question can reveal hidden complexities. Although the statutory language in section 2900.5 'may appear to have meaning which is self-evident, the appellate courts have had considerable difficulty in applying the words to novel facts.' [Citation.] 'Probably the only sure consensus among the appellate courts is a recognition that section 2900.5, subdivision (b), is "difficult to interpret and apply." [Citation.] As [the California Supreme Court has] noted, in what is surely an understatement, "[c]redit determination is not a simple matter." ' [Citation.]" (*In re Marquez* (2003) 30 Cal.4th 14, 19.)

In *Joyner* and *Bruner*, the California Supreme Court recognized and applied a rule of "strict causation" to "cases involving the possibility of *duplicate credit* that might create a windfall for the defendant." (*In re Marquez, supra*, 30 Cal.4th at p. 23.) *Joyner* involved criminal proceedings in California and Florida. (*Joyner, supra*, 48 Cal.3d at p. 489.) Joyner sought "presentence custody credits against his California sentence for custody time in Florida and California from the date a 'hold' was placed against him for the California offenses until he was sentenced in California, all of which time has already

11

been credited against petitioner's Florida sentence." (*Ibid*.) The court held: "[A] period of time previously credited against a sentence for unrelated offenses cannot be deemed 'attributable to proceedings' resulting in a later-imposed sentence unless it is demonstrated that the claimant would have been at liberty during the period were it not for a restraint relating to the proceedings resulting in the later sentence. In other words, duplicative credits against separately imposed concurrent sentences for unrelated offenses will be granted only on a showing of strict causation." (*Ibid*.)

In reaching its holding in *Joyner*, the Supreme Court examined the purposes for presentence credits: "(1) eliminating the unequal treatment suffered by indigent defendants who, because of their inability to post bail, serve a longer overall confinement for a given offense than their wealthier counterparts [citation] and (2) equalizing the actual time served in custody by defendants convicted of the same offense [citation]." (*Id*. at p. 494.) It noted that both "purposes are concerned with equalizing the treatment of different individuals each convicted in a single proceeding of the same offense or offenses." (*Ibid*.)

In *Bruner*, *supra*, 9 Cal.4th 1178, the Supreme Court applied *Joyner*'s "strict causation" test to a different factual scenario. Defendant Bruner was convicted of a new crime and received a prison sentence "concurrent" to a term he was already serving for violation of parole in another case. (*Id*. at p. 1180.) The defendant's "custody as a parole violator was based in part on the same drug incident that led to the later conviction, but also upon additional, unrelated grounds." (*Ibid*.) The court reasoned: "[S]ection 2900.5 is intended to provide equitable treatment for one held in *pretrial* custody on mere *charges* of crime, not to give credit for time already being served and credited on another term or sentence for unrelated violations. In this case, once defendant began serving a parole revocation term founded upon multiple, unrelated acts of misconduct, his custody was unavoidable on that basis regardless of the fact that he was simultaneously awaiting trial on the single criminal charge. [Citation.]" (*Id*. at p. 1192.)

12

In *Bruner*, the court held: "[W]here a period of presentence custody stems from multiple, unrelated incidents of misconduct, such custody may not be credited against a subsequent formal term of incarceration if the prisoner has not shown that the conduct which underlies the term to be credited was also a 'but for' cause of the earlier restraint. Accordingly, when one seeks credit upon a criminal sentence for presentence time already served and credited on a parole or probation revocation term, he cannot prevail simply by demonstrating that the misconduct which led to his conviction and sentence was 'a' basis for the revocation matter as well." (*Id*. at pp. 1193-1194.) Thus, "when presentence custody may be concurrently attributable to two or more unrelated acts, and where the defendant has already received credit for such custody in another proceeding, the strict causation rules of *Joyner* should apply." (*Id*. at p. 1180.) The court concluded: "Here, defendant received credit for all presentence custody in his parole revocation proceeding, and he has failed to demonstrate that but for the cocaine possession leading to his current sentence, he would have been free, or at least bailable, during that presentence period. Hence, he is not entitled to duplicative credit against the current sentence." (*Id*. at pp. 1180-1181.)

In *Bruner*, the Supreme Court briefly discussed the second sentence of section 2900.5, subdivision (b), which limits credit where a single period of custody is attributable to multiple offenses for which a defendant receives consecutive sentences. (*Id*. at p. 1192, fn. 9.) It noted: "[T]here is no indication the 1978 amendment [to section 2900.5, which added the second sentence to subdivision (b),] was concerned with concurrent sentences for unrelated conduct imposed in *multiple proceedings*. By its terms, the amendment does no more than clarify that when consecutive terms are imposed for multiple offenses in a single proceeding, only one of the terms shall receive credit for presentence custody, while leaving undisturbed the accepted principle that when *concurrent* sentences are imposed at the same time, presentence custody is credited against all." (*Ibid*.)

13

This "accepted principle" was discussed in *People v. Adrian* (1987) 191 Cal.App.3d 868.  The appellate court explained: "If the defendant is arrested and charged with multiple offenses, the presentence time is credited against the term imposed on each crime where concurrent sentences are imposed.  (*People v. Schuler* (1977) 76 Cal.App.3d 324, 330. . . .)  Thus, if the multiple crimes are prosecuted in a single proceeding and concurrent sentences are ordered, it makes no difference that the crimes were committed at different times."  (*People v. Adrian*, *supra*, 191 Cal.App.3d at pp. 875-876; see *People v. Ayon* (1987) 196 Cal.App.3d 1114, 1117.)

*People v. Kunath* (2012) 203 Cal.App.4th 906, extended this principle to simultaneous concurrent sentencing in multiple cases.

b.  *Actual Days in Presentence Custody*

Defendant asserts in his opening brief that the credit calculations were incorrect and, pursuant to statute and case law applying it, he is entitled as a matter of statute and case law to have additional presentence custody to be credited against the concurrent sentences imposed in both Case No. CR-11-01306 and Case No. CR-11-01572.  Defendant has the burden, "as the party claiming credit, to demonstrate his entitlement to credit" for any particular period.  (*People v. Huff* (1990) 223 Cal.App.3d 1100, 1106.)

Defendant claims that he is entitled to be credited in both cases for presentence custody commencing with his arrest on September 17, 2012 (for the conduct attributable to Case No. CR-11-01572) through the date of sentencing in both cases on February 16, 2012, a total of 153 actual days.  There is no dispute that, in Case No. CR-11-01306, he is also entitled to credit for the two days he spent in San Benito County jail following his arrest in July 2011.  Thus, according to defendant's calculations, he is entitled to 155 actual days in Case No. CR-11-01306 and 153 actual days in Case No. CR-11-01572.

*People v. Gisbert* (2012) 205 Cal.App.4th 277, the only case cited by defendant in support of his argument, does not aid him.  In that case, the court held that the defendant was "not entitled to any presentence custody credits because he would not have been free

14

of custody but for his incarceration while awaiting trial on the second degree vehicle burglary charge, as he was already committed to state prison in connection with an earlier burglary conviction." (*Id*. at p. 279.)

The People initially agreed with defendant's credit calculations, however, citing *People v. Kunath*, *supra*, 203 Cal.App.4th 906 (*Kunath*). We asked the parties to discuss in supplemental briefs, among other issues, *Kunath's* holding and its proper construction in light of the "attributable " requirement of section 2900.5, subdivision (b). The People withdrew their concession.

In *Kunath*, the defendant was arrested for possession of a controlled substance for sale and then "released on bond." (*Kunath, supra,* 203 Cal.App.4th at p. 909.) The defendant was arrested a short time later for an unrelated possession of a controlled substance and "confined pending trial." (*Ibid*.) The defendant pleaded guilty in both cases. (*Ibid*.) When subsequently sentenced in those cases, the trial court imposed concurrent prison terms. (*Ibid*.) "The trial court rejected Kunath's argument that he should receive presentence custody credits in each case for the time he was *in custody on both cases*." (*Ibid*., italics added.)

On appeal, defendant Kunath contended that "the trial court erred in refusing to apply presentence custody credits in each case for the time he was *simultaneously* in presentence custody." (203 Cal.App.4th at p. 909, italics added.) The appellate court agreed: "Where . . . the defendant's custody is solely presentence on all charges and he is simultaneously sentenced on all charges to concurrent terms, the policy behind section 2900.5 applies. Presentence custody credits must apply to all charges to equalize the total time in custody between those who obtain presentence release and those who do not. [¶] Here Kunath was in presentence custody on mere charges of crime until he was sentenced simultaneously on both cases. Unlike *Bruner*, at no time did Kunath's presentence custody overlap custody on a crime for which he had previously been convicted. Because Kunath was in presentence custody on mere charges of crimes in both cases, he

15

is entitled to full credit for the time spent in presentence custody in *both cases*." (*Id*. at p. 911, italics added.) The appellate court could not determine how the trial court had calculated presentence custody credit, however, and remanded for recalculation, impliedly consistent with its determinations. (*Ibid*.)

The appellate court in *Kunath* clearly recognized that "[s]ection 2900.5, subdivision (b) allows presentence credit to be given 'only where the custody to be credited is *attributable* to proceedings related to the same conduct for which the defendant has been convicted.' " (*Kunath*, *supra*, 203 Cal.App.4th at p. 909, italics added.) Accordingly, we understand *Kunath* as holding, consistent with that statutory provision and with *Bruner*, that when a trial court imposes only concurrent sentences in multiple cases at the same time, a defendant is entitled to all presentence custody attributable to each of the proceedings so long as that custody has not been already credited to a previously imposed sentence. (See *id*. at pp. 909–911.) We do not read *Kunath* as authorizing credit for a period of custody that cannot be attributed to a proceeding. "Section 2900.5 does not authorize credit where the pending proceeding has no effect whatever upon a defendant's liberty." (*In re Rojas* (1979) 23 Cal.3d 152, 156.) To the extent that *Kunath* may be construed as disregarding the "attributable" requirement and reaching a result that is inconsistent with the express language of section 2900.5, subdivision (b), we respectfully disagree with that result.

Defendant, who limited his appeal to a question of statutory application, now contends in his supplemental briefs that, if *Kunath* was wrongly decided, he has been disparately treated compared to "those pretrial detainees for whom bail has been formally revoked on the second arrest." He insists that if he is not entitled to presentence custody credits in both cases for the entire period from September 17, 2011 to February 16, 2012 "by force of statute, he is by the force of the Equal Protection Clause of the Fourteenth Amendment." He also maintains that "if *Kunath* is wrong, then trial counsel was ineffective for failing to move to exonerate bail" and he is "entitled to full credits . . . by

16

virtue of his right to effective assistance of counsel as guaranteed by the Sixth Amendment."  We did not ask for additional briefing on issues unrelated to the proper credit calculation based on statute.  We deem these new, alternative contentions waived. (See *People v. Lewis* (2008) 43 Cal.4th 415, 536, fn. 30 ["Generally, a contention may not be raised for the first time in the reply brief.  [Citation.]"]; *Hibernia Sav. & Loan Society v. Farnham* (1908) 153 Cal. 578, 584 [An appellant should "make the points on which he relies in his opening brief, and not reserve them for his reply, and that the court may properly consider them as waived unless so made.  [Citations.]".)

As the People now note in their supplemental brief:  "*Kunath*'s holding [was] designed to protect a defendant held in presentence custody on two charges *at the same time*" but in this case defendant "was not simultaneously in custody on both charges, save for one day."  In Case No. CR-11-01306, defendant posted bail for conduct leading to his conviction before he was arrested on September 17, 2011 for another crime and he remained free on bail in that case until January 9, 2012.  Defendant has not shown that that proceeding effected any restraint on his liberty on or after September 17, 2011 and before January 9, 2012.  Even under the reasoning of *Kunath* as we understand it in light of subdivision (b) of section 2900.5, defendant is not entitled to credit in Case No. CR-11-01306 for the period from his arrest on September 17, 2011 to January 8, 2012 because his presentence custody during that period was not attributable to that proceeding.  Similarly, defendant is not entitled to credit in Case No. CR-11-01572 for the period from January 10, 2012 to February 16, 2012 (the date of sentencing) because he was released on his own recognizance in that case on January 9, 2010.  As the People observe, defendant was effectively in custody in both cases only on January 9, 2012.[4]

---

[4]     The probation report for Case No. CR-11-01306 did not report that defendant was in custody on January 9, 2012 and, consequently, the court credited defendant with only 40 actual days in that case.  On January 9, 2012, defendant was in custody for at least part of the day in each case and, therefore, is entitled to credit for a full day in both cases.

17

In his original briefs, defendant does not challenge the court's orders regarding his custody or release in Case Nos. CR-11-01306 and CR-11-01572 or claim ineffective assistance of counsel with respect to those orders. Accordingly, we do not consider whether the court erred or defense counsel should have done something to avoid defendant being, for the most part, in presentence custody on only one of the two cases.

Based on the record, credit for actual presentence custody from July 22, 2011 to July 23, 2012 (two actual days) and from January 9, 2012 to February 16, 2012 (39 actual days), a total of 41 (rather than 40) actual days, should have been awarded in Case No. CR-11-01306. Credit for actual presentence custody from September 17, 2011 to January 9, 2012, a total of 115 actual days, was properly awarded by the trial court in Case No. CR-11-01572. The People reach the same conclusions in their supplemental brief.

3. *Conduct Credit*

In their original briefs, the parties implicitly recognized that the presentence conduct credit authorized by law is limited by section 2933.1, subdivision (c), because defendant was convicted by plea of forcible rape and he admitted inflicting great bodily injury in the commission of that offense. (§§ 2933.1, subds. (a), (c); 667.5, subd. (c).) Defendant maintains that, under the 15 percent limitation of 2933.1, he is entitled to 23 days of conduct credit (155 x 0.15) in Case No. CR-11-01306 and 22 days of conduct credit (153 x 0.15) in Case No. CR-11-01572. The People initially agreed with those assertions. Defendant's conduct calculations are incorrect because they are not based on the number of actual days in custody attributable to each proceeding.

In their supplemental brief, the People maintain that the trial court correctly calculated that defendant was entitled to six days of conduct credit in Case No. CR-11-

---

(See *Kunath*, *supra*, 203 Cal.App.4th at pp. 909–911; *People v. King* (1992) 3 Cal.App.4th 882, 886; *People v. Smith* (1989) 211 Cal.App.3d 523, 526.)

18

01306 and 56 days of conduct credit in Case No. CR-11-01572. The trial court overlooked, as the People now seem to do, that 2933.1's 15 percent limitation applies to "any person who is convicted of a felony offense listed in subdivision (c) of Section 667.5." (§ 2933.1, subds. (a), (c).)

"[B]y its terms, section 2933.1 applies to the offender not to the offense and so limits a violent felon's conduct credits irrespective of whether or not all his or her offenses come within section 667.5." (*People v. Ramos* (1996) 50 Cal.App.4th 810, 817; see *People v. Nunez* (2008) 167 Cal.App.4th 761, 765.) Therefore, section 2933's limitation on presentence conduct credit "applies to each offense of a defendant's entire prison term if *any* of the offenses for which he is sent to prison is violent." (*People v. Nunez*, *supra*, 167 Cal.App.4th at p. 765 [court correctly applied the 15 percent limitation on presentence conduct credit to two felony offenses, one violent (robbery) and one nonviolent (unlawful driving), charged in separate cases where court imposed concurrent prison sentences following revocation of probation in the robbery case]; see *In re Reeves* (2005) 35 Cal.4th 765, 774.)

Accordingly, in Case No. CR-11-01306, conduct credit is limited to six days conduct credit (41 x 0.15) and, in Case No CR-11-01572, conduct credit is limited to 17 days conduct credit (115 x 0.15). (See *People v. Ramos*, *supra*, 50 Cal.App.4th at pp. 816-817 [defendant entitled to greatest whole number of days that do not exceed 15 percent of actual period of presentence confinement].)

DISPOSITION

In Case No. CR-11-01306, the judgment is modified to reflect 41 days of actual days credit plus six days of local conduct credit for total presentence credit of 47 days. In Case No CR-11-01572, the judgment is modified to reflect 115 days of actual days credit plus 17 days of local conduct credit for total presentence credit of 132 days. As modified, the judgment is affirmed. The trial court is directed to prepare an amended

19

abstract of judgment reflecting the modifications and to forward a certified copy to the Department of Corrections and Rehabilitation.

_____

ELIA, J.

WE CONCUR:

_____

RUSHING, P. J.

_____

PREMO, J.

*People v. Jacobs*

H038082

21

Trial Court:                    San Benito County Superior Court

Trial Judge:                    Hon. Steven R. Sanders

Attorney for Appellant:         Mark David Greenberg,
                                Under Appointment by the
                                Court of Appeal

Attorneys for Respondent:       Kamala D. Harris,
                                Attorney General,
                                Dane R. Gillette,
                                Chief Assistant Attorney General,
                                Gerald A. Engler,
                                Senior Assistant Attorney General,
                                Stan Helfman and
                                Jeffrey M. Laurence,
                                Deputy Attorneys General

*People v. Jacobs*

H038082