Filed 12/8/20  P. v. Cardoza CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JESSE ALEXANDER CARDOZA,<br><br>Defendant and Appellant. | B299328<br><br>(Los Angeles County Super. Ct. No. TA141624) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Laura R. Walton, Judge.  Affirmed with directions.

Janyce Keiko Imata Blair, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, David E. Madeo and Theresa A.

Patterson, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

A jury convicted Jesse Alexander Cardoza on two counts of murder. He appeals, arguing the trial court violated his constitutional rights to counsel and to effective assistance of counsel when the court decided how to respond to a note from the jury at a hearing where Cardoza was represented by substitute counsel rather than trial counsel. Because we do not presume prejudice in this situation, and Cardoza cannot show prejudice, we affirm the convictions. We also conclude Cardoza forfeited his argument the trial court violated his due process rights under *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*), which this court decided over five months before the trial court sentenced Cardoza, by imposing a fine and assessments without determining his ability to pay.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *The People Charge Cardoza with Murdering Two People with a Knife*

Cardoza stabbed and killed two people, one on September 24, 2016 and one on October 29, 2016. Both attacks occurred during fights after a party.

The People charged Cardoza with two counts of murder. The People also alleged Cardoza personally used a dangerous or deadly weapon within the meaning of Penal Code section 12022,

2

subdivision (b)(1),[1] in committing both offenses and that the commission of the two murders was a special circumstance within the meaning of section 190.2, subdivision (a)(3).

> B.     *The Jury Reaches an Impasse, and the Trial Court Rereads Certain Instructions and Allows Counsel To Present Additional Argument*

In the morning on the fourth partial day of deliberations, the jurors sent the trial court a note stating (despite the court's instruction not to disclose their votes) that they were deadlocked on the September 24, 2016 murder count at 11 jurors for second degree murder and one juror for not guilty and that they were deadlocked on the October 29, 2016 murder count at 10 jurors for first degree murder, one juror for second degree murder, and one juror for not guilty. At a hearing to discuss the court's response to the jury's note, the two prosecutors who tried the case appeared for the People, and a substitute counsel "specially" appeared for Cardoza in place of the attorney who represented Cardoza at trial. The court stated it intended to bring the jurors into the courtroom and ask if there was anything the court could do "to assist them in reaching a unanimous verdict in this case" and, at the prosecutors' suggestion, to read the jurors CALCRIM No. 3551, the instruction on further deliberations when a jury is deadlocked. (See *People v. Hem* (2019) 31 Cal.App.5th 218, 222.)

The court called the jurors into the courtroom and asked the presiding juror if there had been any "movement in the votes," to which the presiding juror said, "No." In response to the court's question whether there was anything the court could do or instructions the court could read, the presiding juror stated, "Basically, from what I understand, is that there either has to be

---

[1]     Undesignated statutory references are to the Penal Code.

3

testimony that someone actually saw the knife and the stabbing . . . . They just wanted to have some proof that the defendant stabbed the victims. It was not enough evidence." At a sidebar conference, the court suggested rereading the instructions on circumstantial evidence, and the prosecutors suggested allowing counsel to present additional argument on circumstantial evidence. Substitute counsel did not object. The court said that trial counsel for Cardoza, who the prosecutor represented was an hour away and could argue after lunch, would need to return to the courtroom. The court decided to reread the instructions on circumstantial evidence and allow each side to present argument "concerning the circumstantial evidence as to the proof of the stabbing." When the sidebar conference concluded, the court told the jurors that after lunch it would read instructions on circumstantial evidence and allow the attorneys to present additional argument on how those instructions applied to the case.

When the proceedings resumed after lunch, the court stated that the clerk had spoken with trial counsel for Cardoza and that the clerk told counsel the court wanted him to be in court at 2:30 p.m. When the court indicated it was going to proceed and read the jurors CALCRIM No. 3551 and the pattern instructions on circumstantial evidence, substitute counsel for Cardoza stated, "Would the court be willing to forego the reading of any further instructions until [trial counsel for Cardoza] gets here? I don't know a thing about this case. I'm the conflict attorney today in the courthouse. I'm feeling very uncomfortable about this being done on the record at this point. I don't want to jeopardize this case in any way at all. Since he will be here within a half hour, I'm asking the court to forgo the reading of the instructions until [trial counsel for Cardoza] has an opportunity to address the issue himself." The court stated that

4

trial counsel for Cardoza told the clerk he did not object to rereading instructions the court had already read to the jury. One of the prosecutors confirmed that trial counsel for Cardoza told him the same thing. Substitute counsel for Cardoza said, "Thank you. I did not have that discussion with him, Your Honor, so I didn't know that." In response to substitute counsel's question, the court confirmed it was only reading CALCRIM No. 3551 and instructions the court had previously read. Substitute counsel stated, "Thank you, Your Honor. I appreciate that." The jurors returned to the courtroom, and the court read those instructions and told the jury the attorneys would give further argument when trial counsel for Cardoza arrived.

When trial counsel for Cardoza arrived later that afternoon, the court summarized for him what had occurred in his absence (and in substitute counsel's presence): the jury's note, the court's discussion with the presiding juror, and the reading of the CALCRIM instructions on circumstantial evidence and further deliberations. The court also put on the record that the jury had asked another question, this time asking for "clarification of the difference between first degree and second degree murder." The court stated that, after conferring with one of the prosecutors and trial counsel for Cardoza, the court answered the question by telling the jurors that they should review CALCRIM Nos. 520 and 521 and that, for first degree murder, the defendant had to "have acted, one, willfully, two, deliberately, and three, with premeditation." The court said that it intended to bring the jurors into the courtroom for additional argument by counsel, but that trial counsel for Cardoza had indicated he did not want additional argument.

Trial counsel for Cardoza argued: "First of all, I would have a strong objection to an argument by the People. It's just not fair, and it's in violation of due process because I know this

5

court would never give me an opportunity to talk to this jury if it was 11 to 1 for innocent." Counsel objected to additional argument because, given that the court and counsel knew the jury "count" was 11 to 1 to convict, "the pressure on this one juror is undue, and it's in violation of due process." Trial counsel for Cardoza stated: "I'm not going to proceed because of the violation of due process. What's fair here? He's had two times to argue, and where are you going to limit it?" Counsel asked the court to excuse him and Cardoza "from any proceeding in this matter." Trial counsel for Cardoza further stated: "I would like to add that [the jurors] have been advised that they can read the law. It's in there. They can see what circumstantial evidence is. I don't mind if he reads the law. Why does he have a chance now to talk about facts and evidence and all of that? It's just—just boggles my brain." And: "I doubt very seriously if this court, or any court, had a count of . . . guilty or not guilty before they start giving the district attorney the floor again. I've never seen it." The trial court took a personal waiver of Cardoza's right to be present during the prosecutors' argument, but ultimately ordered Cardoza and his attorney to remain in the courtroom. With trial counsel for Cardoza's permission, the court informed the jury that counsel for Cardoza would not be making any further argument. At the conclusion of the prosecutor's additional argument, the trial court denied Cardoza's motion for a mistrial.

C. *The Jury Convicts Cardoza*

The jury found Cardoza guilty of second degree murder on one count and first degree murder on the other count. The jury also found the special circumstance and weapon allegations true. On the conviction for second degree murder, the trial court sentenced Cardoza to a prison term of 15 years to life, plus one

year for the weapon enhancement. On the conviction for first degree murder with the special circumstance finding, the court sentenced Cardoza to life in prison without the possibility of parole, plus one year for the weapon enhancement.[2] Cardoza timely appealed.

## DISCUSSION

Cardoza does not argue the trial court erred in rereading the CALCRIM instructions to the jury or in allowing both sides to present additional argument on circumstantial evidence. Nor does he argue, as his trial counsel argued to the trial court, that allowing the prosecutors to present a third argument to the jury violated due process. Instead, Cardoza argues that having a hearing on how to respond to the jury's note with Cardoza's substitute counsel, rather than his trial counsel, denied Cardoza his constitutional right to counsel under *United States v. Cronic* (1984) 466 U.S. 648 [104 S.Ct. 2039, 80 L.Ed.2d 657] (*Cronic*) and his right to effective assistance of counsel under *Strickland v. Washington* (1984) 466 U.S. 668 [104 S.Ct. 2052, 80 L.Ed.2d 674] (*Strickland*).

A.      *Cardoza Was Not Deprived of His Right to Counsel*

Cardoza argues that "the representation rendered . . . by [substitute counsel], who appears to have been thrust into a circumstance in which she could only advocate for [Cardoza] on the procedural point that the proceedings should not take place

---

[2]      The minute order and the abstract of judgment erroneously state the court sentenced Cardoza to life without the possibility of parole on both counts. The trial court will have to correct both errors.

7

without defense trial counsel and not on any point of substance, was of such a level that it amounted to a constructive denial of [his] right to counsel" under *Cronic*.  Citing substitute counsel's statement that she did not know anything about the case, Cardoza argues substitute counsel "did not advocate for [Cardoza] and the evaluation and analysis of the nature of the jury impasse and of the agreed-upon course of action were never subjected to 'adversarial testing.'"  Cardoza asserts his substitute counsel "was not and, because of her lack of familiarity with his case, could never have been an effective advocate for [Cardoza] in these critical and adversarial proceedings."

Under the United States Supreme Court's decisions in *Cronic* and *Strickland*, "the right to the assistance of counsel is violated either by (1) the complete denial of counsel or its equivalent, or (2) the denial of the effective assistance of counsel. [Citations.] . . . [T]ypically, a defendant claiming a violation of the federal constitutional right to effective assistance of counsel must satisfy a two-pronged showing: that counsel's performance was deficient, and that the defendant was prejudiced, that is, there is a reasonable probability the outcome would have been different were it not for the deficient performance.  [Citation.]  In contrast, a defendant is spared 'the need of showing probable effect upon the outcome . . . where assistance of counsel has been denied entirely or during a critical stage of the proceeding . . . the likelihood that the verdict is unreliable is so high that a case-by-case inquiry is unnecessary.  [Citations.]  But only in "circumstances of that magnitude" do we forgo individual inquiry into whether counsel's inadequate performance undermined the reliability of the verdict.'" (*People v. Alexander* (2010) 49 Cal.4th 846, 888.)  The California Supreme Court has emphasized that

the exception to "the rule that a defendant claiming ineffective assistance of counsel must show prejudice" is "very narrow." (*People v. Rices* (2017) 4 Cal.5th 49, 91, citing *Florida v. Nixon* (2004) 543 U.S. 175, 190 [125 S.Ct. 551, 160 L.Ed.2d 565] and *Bell v. Cone* (2002) 535 U.S. 685, 696-697 [122 S.Ct. 1843, 152 L.Ed.2d 914]; see *People v. Brown* (2014) 59 Cal.4th 86, 115.)

The United States Supreme Court in *Cronic* "recognized three categories of cases that constitute per se violations of the Sixth Amendment right to counsel with respect to which prejudice is presumed: (1) 'the complete denial of counsel' [citation] at a critical stage of trial, (2) counsel's failure 'to subject the prosecution's case to meaningful adversarial testing' [citation], and (3) 'the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small [under the particular circumstances] that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial.'" (*People v. Jacobs* (2013) 220 Cal.App.4th 67, 76, quoting *Cronic, supra*, 466 U.S. at pp. 659-660; see *People v. Brown, supra*, 59 Cal.4th at p. 115 ["'Defendants have been relieved of the obligation to show prejudice [under *Cronic*] only where counsel was either totally absent or was prevented from assisting the defendant at a critical stage.'"];[3] *People v. Streeter* (2012) 54 Cal.4th 205, 232 ["when the defendant is represented

---

[3] The People concede "a court's response to an impasse during jury deliberations constitutes a critical stage of the proceeding . . . ." (See *People v. Hawthorne* (1992) 4 Cal.4th 43, 68-69 ["failure to give notice or afford an opportunity to respond" to an inquiry from the jury or to "take[ ] some action on the defendant's behalf to amplify, clarify, or modify the supplemental instruction or procedure" is constitutional error]; *People v. Bradford* (2007) 154 Cal.App.4th 1390, 1410 ["Jury instruction is a critical stage of the proceedings."].)

9

by counsel, the presumption of prejudice will only stand when counsel entirely failed to subject the prosecution's case to meaningful adversarial testing"].) "Prejudice must be shown if counsel has opposed the prosecution throughout the relevant proceeding, even if counsel failed or was unable to do so at specific points." (*People v. Hernandez* (2012) 53 Cal.4th 1095, 1106.)

Cardoza does not fall within any of the *Cronic* exceptions to the requirement of prejudice. He was represented by counsel at all times; at no point in the proceedings was he completely denied counsel or its equivalent. During one morning of jury deliberations he was briefly represented by an attorney who was substituting or standing in for his trial attorney, but that attorney was still an attorney. (See *People v. Streeter*, *supra*, 54 Cal.4th at p. 232 [representation by substitute counsel without trial counsel during jury selection did not deny the defendant his right to counsel under the federal and state constitutions "because defendant had an attorney representing him at all times during the jury selection proceedings" and "there was not a complete denial of counsel, let alone 'structural error'"]; *People v. Benavides* (2005) 35 Cal.4th 69, 86-87 [absence of lead counsel during a portion of jury selection was not a "presumptively prejudicial violation of [the defendant's] right to counsel" where "either lead counsel or cocounsel, or both, were present at all times"].)

Nor was there a failure to meaningfully and adversarially test the People's case. The People's case was over; Cardoza's trial counsel had subjected it to meaningful adversarial testing for nine trial days. The issue was whether the court would reread certain instructions and one pattern jury instruction on continuing deliberations when the jury was deadlocked. Substitute counsel challenged the prosecutors' request and the

10

court's ruling by objecting to the court rereading any instructions until trial counsel returned later in the afternoon.  That the court overruled the objection did not indicate the absence of an adversarial process.  To the contrary, the proceedings reflected that the adversarial process was functioning properly:  The prosecutors made a request, Cardoza's substitute counsel objected, and the court ruled.  (See *Bell v. Cone, supra,* 535 U.S. at pp. 696-697 ["When we spoke in *Cronic* of the possibility of presuming prejudice based on an attorney's failure to test the prosecutor's case, we indicated that the attorney's failure must be complete."]; *In re Visciotti* (1996) 14 Cal.4th 325, 353 ["notwithstanding the broad language in the *Cronic* opinion [citation] to the effect that when 'counsel entirely fails to subject the prosecution's case to meaningful adversarial testing,' the right to competent counsel has been denied and the result of the trial is presumptively unreliable, the actual application of *Cronic* has been much more limited"]; *In re Avena* (1996) 12 Cal.4th 694, 727 [trial counsel who waived opening statement, called no defense witnesses, and did not address two murder charges or two special circumstance allegations in closing argument was "neither 'totally absent' nor 'prevented' from assisting petitioner at trial"].)

Finally, this was not a case where, under the circumstances, the likelihood was small that even a fully competent attorney could provide effective assistance.  Cases in that category include those where "the court barred counsel from the courtroom, interfered with their ability to confer with their clients [citation], directed them to sit mute at the counsel table [citation], issued an order out of pique or whim directing counsel to stop representing their clients, or anything similarly serious." (*People v. Rivas* (2013) 214 Cal.App.4th 1410, 1424-1425.)  This was not such a case.  There was a discussion without Cardoza's

11

trial counsel about rereading jury instructions on circumstantial evidence, but substitute counsel—competently, albeit unsuccessfully—objected and asked the court not to read the instructions until trial counsel returned and could be heard. There was also a discussion about having counsel present additional argument on the concept of circumstantial evidence and how it related to the evidence in the case, but Cardoza's trial counsel strenuously objected to any additional argument when he returned to the courtroom. (Cf. *Cronic*, *supra*, 466 U.S. at pp. 660-661 [citing *Powell v. Alabama* (1932) 287 U.S. 45 [53 S.Ct. 55, 77 L.Ed. 158], where the trial court on the day of trial appointed an out-of-town lawyer who "was unwilling to represent the defendants on such short notice" but who assisted the defendants with "whatever help the local bar could provide," as an example of "a case in which the surrounding circumstances made it so unlikely that any lawyer could provide effective assistance that ineffectiveness was properly presumed without inquiry into actual performance at trial"].)

The cases cited by Cardoza, *People v. Nunez* (1983) 144 Cal.App.3d 697 and *People v. Hogan* (1982) 31 Cal.3d 815, disapproved in *People v. Cooper* (1991) 53 Cal.3d 771, 836, do not support his argument. Both cases involved the complete absence of counsel, not substitute or stand-in counsel, and in both cases the court (contrary to Cardoza's position that prejudice should be presumed) considered whether the error was prejudicial. In *Nunez* the trial court excused an alternate juror, ordered readback of testimony, accepted the jury's verdict, and polled the jurors, all in the absence of (and indeed without even notifying) the defendant's attorney. (*Nunez*, at pp. 701-703.) The court in *Nunez* held this was error, but concluded the error was harmless under *Chapman v. California* (1967) 386 U.S. 18, 24 [87 S.Ct. 824, 17 L.Ed.2d 705], because the defendant "was not prejudiced

by the absence of his counsel during the jury's deliberations." (*Nunez*, at pp. 702-703.) In *Hogan* the trial court responded to jury requests and sent exhibits into the jury room without notifying the defendant's attorney. (*Hogan*, at p. 848.) The Supreme Court in *Hogan* held the "conduct of the trial court in sending in the exhibits without notifying counsel was serious error," but the Supreme Court proceeded to consider "whether the denial of assistance of counsel here was prejudicial error requiring reversal," ultimately concluding the error was not harmless under *Chapman*. (*Id.* at p. 850.)[4]

> B.    *Cardoza Was Not Deprived of His Right to Effective Assistance of Counsel*

Cardoza argues, briefly and in the alternative, that his substitute counsel "failed to provide [him] with the effective representation the Sixth Amendment right to counsel contemplates." Cardoza asserts his substitute counsel provided ineffective assistance because she "was unable to advocate for [him] in resolving a delicate jury impasse matter involving one holdout juror for acquittal because counsel knew nothing about [the] case."

To establish ineffective assistance of counsel under *Strickland*, ""a defendant must show that (1) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficient performance was prejudicial, i.e., there is a reasonable probability that, but for counsel's failings, the result would have

---

[4]    Cardoza mentions the right to counsel under the California Constitution, but he does not analyze whether or how that right applies any differently from the right to counsel under the United States Constitution.

13

been more favorable to the defendant. [Citation.] 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'"'" (*People v. Rices, supra,* 4 Cal.5th at p. 80; see *People v. Sepulveda* (2020) 47 Cal.App.5th 291, 301.) "If a claim of ineffective assistance of counsel can be determined on the ground of lack of prejudice, a court need not decide whether counsel's performance was deficient." (*In re Crew* (2011) 52 Cal.4th 126, 150; see *Strickland, supra,* 466 U.S. at p. 697 ["a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies," and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed"].)

Here, Cardoza suffered no prejudice from substitute counsel's initial failure to object to the court's decision to reread the instructions on circumstantial evidence. The court had already read those CALCRIM instructions, and Cardoza does not argue there was anything erroneous or improper about them. (See *United States v. Chambers* (N.D.Cal. Aug. 19, 2015, No. 08-CR-00658-PJH-4) 2015 WL 12862915, p. 7 [counsel's failure to object to the court rereading instructions was not prejudicial under *Strickland* where there was "no reasonable probability that the court would have sustained an objection to rereading the original instructions"].) The record reflects that trial counsel for Cardoza told the courtroom clerk and one of the prosecutors he had no objection to the court rereading the instructions, and Cardoza does not contend the record on this point is inaccurate. Indeed, when he returned to the courtroom in the afternoon, trial counsel for Cardoza stated that, although he objected to allowing the prosecutor to present additional

14

argument on circumstantial evidence, he had no objection to the court rereading jury instructions the court had already given.

Nor did Cardoza suffer any prejudice from substitute counsel's failure to object to the court's decision to allow additional argument to assist the jurors in reaching a verdict. Trial counsel strenuously objected to the court's decision upon his return to the courtroom. The court heard the objection, allowed trial counsel for Cardoza to present legal argument on the matter, and ensured there was a record of the objection to preserve the issue for appeal. Although trial counsel argued the court's decision to allow additional argument was unfair and violated Cardoza's due process rights, Cardoza does not make those arguments on appeal. He argues only that substitute counsel was ineffective for not making the argument in the morning that trial counsel made in the afternoon. Under these circumstances, substitute counsel's performance, regardless of its comparison to prevailing professional norms, did not cause Cardoza any prejudice.

C.      *Cardoza Forfeited His Challenge to the Restitution Fine and Assessments*

Cardoza argues the trial court violated his due process rights under *Dueñas*, *supra*, 30 Cal.App.5th 1157 by imposing a $300 restitution fine under section 1202.4, subdivision (b), two $30 court facilities assessments under Government Code section 70373, and two $40 court operations assessments under section 1465.8 without determining his ability to pay.[5] The trial court,

---

[5]      The Supreme Court has granted review in *People v. Kopp* (2019) 38 Cal.App.5th 47, review granted November 13, 2019, S257844, on the following issues: Must a court consider a

15

however, sentenced Cardoza on June 20, 2019, almost six months after we issued our opinion in *Dueñas*. Because Cardoza could have raised the issue of his inability to pay the restitution fine and assessments but failed to do so, he has forfeited the argument. (See *People v. Castellano* (2019) 33 Cal.App.5th 485, 490 ["a defendant must in the first instance contest in the trial court his or her ability to pay the fines, fees and assessments to be imposed and at a hearing present evidence of his or her inability to pay the amounts contemplated by the trial court"].)

---

defendant's ability to pay before imposing or executing fines, fees, and assessments? If so, which party bears the burden of proof regarding defendant's inability to pay?

## DISPOSITION

The judgment is affirmed.  The trial court is directed to correct the June 20, 2019 minute order and the abstract of judgment to reflect that the court sentenced Cardoza to a prison term of 15 years to life on his conviction for second degree murder and to a prison term of life without the possibility of parole on his conviction for first degree murder with the special circumstance finding.  The trial court is also directed to send a corrected abstract of judgment to the Department of Corrections and Rehabilitation.


SEGAL, J.


We concur:



PERLUSS, P. J.



FEUER, J.

17