Filed 9/8/14  P. v. Ochoa CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B246266 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA097812) |
| v. | |
| BARRY ERNEST OCHOA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, George Genesta, Judge.  Affirmed and remanded with directions.

Maureen L. Fox, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Roberta L. Davis and Analee J. Brodie, Deputy Attorneys General, for Plaintiff and Respondent.

Barry Ernest Ochoa (appellant) appeals from the judgment after a jury trial in which he was found guilty of felony evading an officer with willful and wanton disregard for the safety of persons or property (Veh. Code, § 2800.2, subd. (a); count 1), three counts of resisting by force or violence an officer in the performance of his duty (Pen. Code, § 69; counts 2, 3 & 4), possessing methamphetamine (Health & Saf. Code, § 11377, subd. (a); count 5), assault by means of force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(1); count 6), two counts of false imprisonment by violence (Pen. Code, § 236; counts 7 & 10), the unlawful driving or taking of a vehicle (Veh. Code, § 10851; count 8), and misdemeanor battery with the infliction of serious injury on a person with whom he had a dating relationship (Pen. Code, § 243, subd. (e)(1); count 11).[1]

He waived a jury trial on the allegations of prior convictions. The trial court found he was a Three Strikes offender based on the three prior qualifying convictions (§§ 667, 1170.20) and that he had served five prior separate prison terms for a felony (§ 667.5, subd. (b)).

Applying the Three Strikes Reform Act of 2012, the trial court sentenced appellant to serve a one-year county jail term followed by a fully consecutive aggregate term in state prison of 24 years 8 months.

**CONTENTIONS**

1. Trial counsel was constitutionally ineffective as he failed to ensure a complete redaction of the audio recordings.

2. In case No. GA018917, the evidence is insufficient to support a finding of a serious or violent felony as to appellant's prior conviction of battery with the infliction of serious injury, a violation of sections 242 and 243, subdivision (d).

3. Two entries in the minutes and abstract of judgment must be corrected as they fail to conform to the oral proceedings of judgment.

---

[1]     All further references to code sections are to the Penal Code unless otherwise indicated.

2

# BACKGROUND

1. *The prosecution's case-in-chief.*

Sandra Sabatino (Sabatino) was appellant's girlfriend. At the time of trial, she recanted earlier statements she had made with respect to appellant's treatment of her in two previous and separate incidents of physical abuse. The prosecution proved its case in part by using her out-of-court and other prior inconsistent statements, as well as the trial testimony provided by several bystanders.

a. *Counts 10 & 11, offenses of false imprisonment by violence and battery on a girlfriend with the infliction of serious injury.*

At about 11:00 a.m. on January 6, 2012, eyewitnesses observed appellant arguing with Sabatino on a sidewalk. Eric Del Toro, a field technician for Verizon, observed appellant grab Sabatino by the arms. Sabatino resisted, yelling, "No, stop." Appellant dragged Sabatino a couple of feet down the sidewalk while she yelled for appellant to let her go. Del Toro telephoned 9-1-1 and got out of his van. Sabatino had fallen to the ground and was covering her mouth with her hand. Appellant tried to pick her up, then walked away when Del Toro came closer. Sabatino had a bloody lip.

Two neighbors saw appellant shoving and dragging Sabatino along the sidewalk. The wife saw appellant push Sabatino into a fence, then push her head down while she was on her knees. When Sabatino lifted her head, she had a bloody lip.

Before the police arrived, appellant returned and told Sabatino to go home and say nothing, then left when Del Toro told him he had telephoned the police.

A few days later, Sabatino told a police officer she had decided to terminate her relationship with appellant because of his drug use and mood swings. She was afraid of retaliation from appellant. She said she did not recall how many times appellant had hurt her and she had not reported his physical abuse to the police.

b. *Counts 6, 7 & 8, offenses of felonious assault, false imprisonment by violence and the unlawful driving of a vehicle.*

At 9:00 to 10:00 p.m. on April 18, 2012, a neighbor, Hector Ramirez, who was a Los Angeles County deputy sheriff, heard Sabatino screaming, "He's going to kill me."

3

Grabbing his badge and gun, Ramirez ran outside. He saw appellant on a driveway chasing Sabatino around her parked car. Appellant got into Sabatino's car and drove off. Sabatino screamed, "Don't take my car." Sabatino told Ramirez appellant had taken her car and her purse was inside. She needed her purse. Sabatino had bruising on her face and arm and complained appellant had attempted to strangle her. Hernandez observed her neck was red.

A minute later, appellant returned to the house, backed a dark-colored car out of the garage and drove off.

Sabatino told a responding Covina police officer that earlier she had gone over to appellant's residence where he lived with his mother. She wanted to return some items belonging to appellant. At the time, she had believed he was in jail. When she knocked on the front door, against her will, appellant dragged her inside the residence. Appellant punched Sabatino in the face and repeatedly kicked her while she was on the floor. When appellant hit her, he told Sabatino, "This is the last time you'll disrespect me." She ran outside, and appellant chased her. Then appellant took her car. He returned and drove his BMW out of the garage and left. Sabatino found her car nearby parked in front of the residence of appellant's cousin.

c. *Counts 1, the offense of evading a police officer with willful disregard.*

On April 28, 2012, Covina Police Officers Timothy Statler (Officer Statler) and Joshua Turner responded to Sabatino's residence following the report of an ongoing altercation. The officers were aware appellant had outstanding arrest warrants. The officers saw appellant sitting in his car arguing with Sabatino, who was standing outside its driver's window. When the officers approached in their marked police vehicle, Officer Statler turned on the police vehicle's red lights and siren. Officer Statler attempted to cut off appellant by driving his vehicle in front of appellant. Appellant backed up, then drove forward straight at the officers' police vehicle. Officer Statler slammed on the brakes to avoid a collision. Appellant drove onto the sidewalk and sped away, failing to stop at a stop sign.

4

Appellant then led the officers on a high-speed chase through residential neighborhoods. By driving at speeds up to 100 miles per hour and failing to stop for stop signs and red lights, appellant evaded the pursuing officers.

Officer Jason Kerns interviewed Sabatino. She said appellant was angry with her as she had refused to take his telephone calls. Appellant drove off when the officers arrived, nearly colliding with the police vehicle.

d. *Counts 2, 3, 4 & 5, offenses of resisting an executive officer in the course of his duties and possessing methamphetamine.*

A detective, Officer Antonio Zavala, attempted to locate appellant. He spoke to Sabatino. She told him she was afraid of appellant and believed appellant was going to hurt her. Appellant had told her he would "take her out" and that he had nothing to lose.

On May 3, 2012, appellant and Sabatino drove together to a pet store to purchase food for appellant's puppy. Covina police officers discovered appellant's location using the Global Positioning Sensor (GPS) on appellant's cell phone. Fifteen Covina police officers responded to arrest appellant. Appellant was in the driver's seat of Sabatino's car in the parking lot talking with Sabatino. The officers approached and requested he alight from the car. Appellant attempted to drive away, but when he reached to the ignition, the keys were not there. Appellant dropped his wallet to the floorboard and grabbed onto the steering wheel with both hands. In order to handcuff appellant and take him into custody, three officers had to drag him from the car. Four officers wrestled with appellant on the ground.

After appellant was taken into custody, the officers removed his wallet from the car's floorboard. The wallet contained 0.36 grams of methamphetamine.

e. *The post-arrest jail telephone calls.*

During the period appellant was in jail awaiting trial, appellant telephoned Sabatino and his mother several times. The police recorded the telephone calls, and at trial, the prosecutor played redacted portions of the telephone calls for the jury. During these calls, appellant blamed Sabatino for his situation, accusing her of manipulating everyone. He told her she had ruined his life and she should "shut up" and stop

5

incriminating him. When she asked what she should do, he told her, "I guess not go to court," and said, "And tell them that that never happened." He told Sabatino she should claim she is "unstable, " is taking medication and is a "cutter." He wanted her to go to court and tell that to the authorities. He advised her she should take her mother with her to corroborate these claims. Appellant directed her to tell the authorities he was merely moving her car out of the driveway, not taking it without her permission. Further, she should make a scene in court as if she was "losing" it. He told her he loved her and wanted to marry her.

Appellant told his mother during the jail telephone calls that he had told Sabatino he would marry her. He added he did not mean it. He told his mother Sabatino should not be going to court. He urged his mother to have Sabatino tell the prosecutor she had been manipulated and forced by the Covina police to press charges with respect to an event that never occurred. Appellant asked his mother to recruit other witnesses to say they were at the Walmart at the time of his arrest and the police unnecessarily beat and kicked appellant. He told her that if he had witnesses to a police beating, he would be released from the charges with his promise not to sue.

2. *The defense case.*

Appellant's mother, Brenda Ochoa (Ochoa), testified and claimed on April 18, 2012, Sabatino was high on drugs and had refused to leave Ochoa's residence. Ochoa denied appellant had hit or chased Sabatino that evening. Sabatino had yelled at Ochoa and her sisters, attempting to get them to give her a ride home although Sabatino's own car was parked in the driveway. Ochoa agreed that afterwards, she had heard Sabatino had to have her car towed from the cousin's residence.

**DISCUSSION**

1. *Ineffective Trial Counsel*

Appellant claims trial counsel was constitutionally ineffective as he failed to ensure the prosecution's audio tapes and the attendant transcripts were fully redacted.

6

a. *Background.*

　　1. *The incident during Sabatino's testimony.*

During Sabatino's testimony, the prosecutor played portions of the audio recordings of the jail telephone calls made by appellant to Sabatino.

During one audio recording, appellant admonished Sabatino she should do more to assist him as he was "looking at a hundred -- over a hundred and 30 years." He added, "And they're offering me 16 years today."

After this recording was played, trial counsel asked for a conference at the sidebar. He alerted the trial court he had missed some objectionable matter in reviewing the contents of the audio tape and referred to the statements above.

Trial counsel said, "I think I have to move for a mistrial on that basis."

The trial court denied the motion for a mistrial. It commented, "Counsel had an opportunity to review all of the transcripts. Court's not responsible for counsel not noticing or seeing something. Either one or both of you missed it. [¶] I figured it was a tactical decision on your part to let the jury know the penalty, and although they're not to consider penalty or punishment, that would be in the back of their minds in reviewing the actions in this case. That's something I've experienced in the past during recordings . . . ." Since neither party objected, "then it is what it is."

The prosecutor said the People would agree to have the statements stricken.

The trial court told trial counsel in the alternative, the trial court could give a limiting instruction to the jury.

Trial counsel said, "Admittedly, it does help my client, but I did want to make a record. Perhaps when the court gives the instructions that the jury is to disregard punishment the trial court should add that [it] includes any mention of potential punishment that the jury heard about during the evidentiary phase of the case."

The trial court pointed out the statements were relevant as they revealed appellant's state of mind, but the trial court could tell the jury it must not consider penalty or punishment in deciding the case.

Trial counsel agreed to an immediate admonishment.

7

The trial court instructed the jury, as follows: "Ladies and Gentlemen, you've heard the recording of the defendant expressing sentiments regarding the possible penalties or punishment he may be facing in this matter. The court will instruct you, you are not to consider penalty or punishment in deciding the case in this matter."

2. *The incident during Ochoa's testimony*.

During Ochoa's testimony, the audio recordings of appellant's telephone calls to Ochoa were played. At one point, the trial court had the recording stopped and announced a conference at the sidebar. It asked the jurors to place the transcript, People's exhibit No. 43, face down on their seats and to file into the jury deliberation room.

Out of the presence of the jury, the trial court informed the parties it had observed a redacted portion of the audio recording remained in the transcript, People's exhibit No. 43. The transcript still referred to comments concerning appellant's potential sentence. The comments were as follows: Ochoa asked appellant, "How much time do they want to give you?" Appellant replied, "130 years." Ochoa inquired, "Why so much?" Appellant said, "Because I'm a three striker."

The trial court had the prosecutor remove the portions of the jurors' transcripts containing the references to sentencing. When the jury returned to the courtroom, the trial court had the properly-redacted transcripts redistributed to the jury. It explained the transcripts had contained a portion of the audio recording that had been redacted. The trial court instructed that if any juror had read on through the transcript beyond the point at which the trial court had stopped the audio tape, the juror was to ignore the unredacted comments and not to consider them in deciding the case.

b. *The analysis*.

Appellant argues trial counsel acknowledged his negligence and that no rational trial counsel would have wanted to have the jury learn of appellant's possible status as a third strike offender or to have the punishment appellant faced disclosed to the jury. Furthermore, appellant was prejudiced by the disclosure, and the trial court's admonishment would not have cured the harm.

8

We disagree.

To prevail on a claim of ineffective assistance of counsel, the defendant must establish both "(1) that counsel's representation fell below an objective standard of reasonableness; and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, a determination more favorable to defendant would have resulted." (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1126, italics omitted.) As to the prejudice component, the California Supreme Court has held that a " 'reasonable probability is a probability sufficient to undermine confidence in the outcome' " of the prosecution. (*People v. Cox* (1991) 53 Cal.3d 618, 656, overruled on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390 421, fn. 22.)

"Reviewing courts defer to counsel's reasonable tactical decisions in examining a claim of ineffective assistance of counsel [citation], and there is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' [Citation.] Defendant's burden is difficult to carry on direct appeal, as we have observed: ' "Reviewing courts will reverse convictions [on direct appeal] on the ground of inadequate counsel only if the record on appeal affirmatively discloses that counsel had no rational tactical purpose for [his or her] act or omission." ' [Citation.]" (*People v. Lucas* (1995) 12 Cal.4th 415, 436-437, criticized on other grounds in *People v. Bolin* (1998) 18 Cal.4th 297, 315.)

If the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged, an appellate claim of ineffective assistance of counsel must be rejected unless counsel was asked for an explanation and failed to provide one, or there simply could be no satisfactory explanation. (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266-267; see also *People v. Vines* (2011) 51 Cal.4th 830, 875-876.)

Trial counsel apparently had no tactical reason for failing to object. He candidly admitted at least with regard to the initial reference to punishment, he had missed these references in reviewing the audio recordings and the transcript. Nevertheless, there is no ground here for a reversal. Trial counsel's failure to object was nonprejudicial.

9

"The prejudice prong [of the test for ineffective trial counsel] requires a defendant to establish that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' (*Strickland* [*v. Washington* (1984) 466 U.S. 668, 694 [80 L.Ed. 2d 674, 104 S.Ct. 2052] (*Strickland*)].) 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' (*Ibid*.) 'In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. [Citations.] Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. [Citation.] This does not require a showing that counsel's actions "more likely than not altered the outcome," but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters "only in the rarest case." [Citation.] The likelihood of a different result must be substantial, not just conceivable. [Citation.]' (*Harrington v. Richter* (2011) 562 U.S. ___, ___–___ [178 L.Ed. 2d 624, 131 S.Ct. 770, 791–792].)" (*People v. Jacobs* (2013) 220 Cal.App.4th 67, 75.)

In the context of appellant's trial, the references to punishment were harmless. Appellant's status as a potential third-strike offender facing an ominous term of imprisonment could have benefited the defense. It may have caused some jurors to have sympathy for appellant as the current charges did not appear to be that serious or violent. Also, many of the current charges involved drug addiction and domestic violence, and the jury may well have viewed Sabatino as contributing to the violence by repeatedly returning to what objectively looked like a relationship that worked for neither party.

Furthermore, the trial court promptly admonished the jury it was not to consider penalty and punishment in determining guilt. It also told any juror who had read ahead to ignore the text stricken from the new transcript of the audio tape. This court is entitled to presume that jurors comprehend and accept a trial court's directions and that they generally understand and faithfully follow a trial court's instructions. (*People v. Mickey* (1991) 54 Cal.3d 612, 689, fn. 17.)

10

The evidence of appellant's guilt was persuasive.

This record fails to demonstrate prejudice, a necessary element of a claim of ineffective trial counsel.

2. *Sufficiency of the evidence supporting the true finding with respect to the allegation of a prior serious felony conviction as to the prior battery conviction.*

Appellant contends the record of his guilty plea to a felony battery within the meaning of sections 242 and 243, subdivision (d), and the sentencing transcript in case No. G0187917 fail to provide proof appellant suffered a prior conviction of battery involving the *personal* infliction of great bodily injury. (§ 667, 1192.7, subd. (c)(8).)

We disagree.

a. *Background.*

The information alleged appellant had three prior convictions of a violent or serious felony in case No. GA018917: (1) kidnapping in violation of section 207, subdivision (a), (2) terrorist threats in violation of section 422, and (3) battery with the infliction of serious bodily injury in violation of sections 242 and 243, subdivision (d). Appellant concedes the kidnapping and terrorist threat offenses were properly alleged and found true as strikes. He also concedes that finding insufficient evidence the battery was a serious or violent felony will not affect appellant's sentence. Nevertheless, he asks this court to determine whether the evidence is sufficient to support the trial court's true finding the battery with serious bodily injury was a serious felony offense within the meaning of section 1192.7, subdivision (c)(8).

Appellant waived a jury trial on the truth of the prior convictions. After reviewing appellant's section 969b package and a copy of certain documents contained in the superior court file in case No. GA018917, the trial court found all three prior convictions to be qualifying prior convictions for the purpose of imposing a Three Strikes sentence. (Appellant was a third-strike offender under prior law, but was entitled to be sentenced as a second strike offender under Three Strikes Reform Act of 2012, Proposition 36.)

The battery in sections 242 and 243, subdivision (d), is not an enumerated felony in section 1192.7, subdivision (c). However, that offense may be treated as a qualifying

11

prior conviction, if during the commission of the offense, the defendant *personally* inflicted "great bodily injury on any person other than an accomplice." (§ 1192.7, subd. (c)(8).) Appellant concedes the infliction of serious bodily injury as used in section 243, subdivision (d), is essentially equivalent to the element of "great bodily injury" present in other criminal statutes, such as section 1192.7, subdivision (c)(8). (*People v. Burroughs* (1984) 35 Cal.3d 824, 831, overruled on another ground in *People v. Blakeley* (2000) 23 Cal.4th 82, 89-90; *People v. Wade* (2012) 204 Cal.App.4th 1142, 1149-1150; *People v. Moore* (1992) 10 Cal.App.4th 1868, 1870 ["a felony battery committed by means of 'serious bodily injury' (Pen. Code, § 243, subd. (d)) may be used to enhance a sentence under the 'serious felony' provisions of Penal Code sections 667, subdivision (a), because the term 'serious bodily injury' is essentially equivalent to and synonymous with the term 'great bodily injury,' as required by Penal Code section 1192.7, subdivision (c)(8)."].)

b. *The analysis.*

In order to establish appellant's prior conviction for battery was a serious felony, the prosecution was required to prove appellant "personally inflicted the injury, rather than that he aided and abetted another [citation], and the victim was not an accomplice." (*People v. Bueno* (2006) 143 Cal.App.4th 1503, 1508, italics omitted.)

In this instance, at the bifurcated trial on the truth of the prior convictions, the trial court considered the following evidence.

The information in case No. GA018917 alleged appellant as the sole defendant charged with battery with serious bodily injury on a person named Tanya Duke (Duke). The count included notice the battery with serious bodily injury constituted a prior serious felony conviction within the meaning of section 1192.7, subdivision (c)(8). The abstract of judgment demonstrated on June 23, 1994, there was a plea in case No. GA018917. The court's June 23, 1994, minute order showed on the date of trial, the victim, Duke, had testified during trial proceedings before the Honorable Thomas W. Stoever. Apparently after Duke's trial testimony, appellant entered a plea of "nolo contendere" to counts 1, 2 and 3. The plea was entered pursuant *People v. West* (1970) 3 Cal.3d 595, 604-608, to charges including the battery with serious bodily injury.

12

Appellant was then referred to the Department of Corrections and Rehabilitation pursuant to section 1203.03 for a diagnostic study.

The trial court also considered the reporter's transcript of the sentencing proceedings, which was included in the section 969b package. The transcript disclosed that at the commencement of the sentencing proceedings, Duke unexpectedly failed to appear. The prosecutor reminded the trial court it had heard Duke's statement when she took the witness stand at the time of the plea. The prosecutor said, given Duke's statement, they did not need to wait for her to appear that morning in order to proceed with sentencing. Trial counsel agreed. The trial court said that it recalled Duke's "testimony" at the previous proceeding, and it would proceed in Duke's absence.

The transcript showed the trial court then sentenced appellant. The prosecutor argued based on the victim's statement at the time of the plea and the diagnostic study, "which is very negative," the People were requesting a maximum three-year term of imprisonment. (The diagnostic study was not included in the section 969b package.) The prosecutor urged the information available to the trial court indicated "[appellant] pose[d] a continuing danger to the victim, despite the fact that she fails to recognize it." The prosecutor commented Duke continued to associate with appellant despite the danger, and unfortunately was about to marry, or had married, appellant.

The trial court listened to trial counsel's remarks, then denied the request for a grant of probation. It imposed an upper term of imprisonment of three years. In imposing the prison term, it made the following findings in aggravation.

". . . [T]he crime involved great violence. It did involve bodily harm and high degree of cruelty, viciousness and callousness. [¶] In some senses the victim was particularly vulnerable. She was in a romantic relationship with this defendant, and the defendant took advantage of that relationship and perpetrated the acts upon Miss Duke that have been referred to."

"In determining the truth of a prior conviction allegation, the trier of fact may look to the entire record of the conviction, but no further. (*People v. Guerrero* (1988) 44 Cal.3d 343, 355-356.) The prosecution is 'precluded from presenting any evidence

13

outside the record of conviction to prove the circumstances of the prior crime.' (*People v. Reed* (1996) 13 Cal.4th 217, 225.) The record of the prior conviction includes transcripts of the preliminary hearing, the defendant's guilty plea, and the sentencing hearing. (*Id.*, at p. 223; [citations].)" (*People v. Thoma* (2007) 150 Cal.App.4th 1096, 1101, italics omitted; see also *People v. Abarca* (1991) 233 Cal.App.3d 1347, 1350 [the record of the prior convictions means all items that could have been used on appeal of that prior conviction, specifically any items considered a normal part of the record under California Rules of Court, rule 33, or by which it could be augmented pursuant to California Rules of Court, rule 12].)

Appellant urges there is insufficient proof in these documents appellant *personally* inflicted the injury on Duke.

In evaluating the sufficiency of the evidence supporting the finding of a prior serious felony and a strike within the meaning of the Three Strikes law, this court views the evidence in the light most favorable to the judgment and presumes in support of the judgment the existence of every fact the trier of fact could reasonably deduce from the evidence. (*People v. Mai* (2013) 57 Cal.4th 986, 1038-1039.) Where the prior conviction is for an offense that can be committed in multiple ways, one or more of which would not qualify it as a strike, and if it cannot be determined from the record the offense was committed in a way that would make it a strike, a reviewing court must presume the offense is not a strike. (*People v. Watts* (2005) 131 Cal.App.4th 589, 596.)

The trial court's required factual findings in aggravation of the term imposed in case No. GA018917 circumstantially indicate the battery occurred during a one-on-one episode of domestic violence. Furthermore, appellant was the only person charged with the battery with serious personal injury. There is no hint in this record another person was involved in the battery appellant perpetrated against Duke.

Respondent cites *People v. Woodell* (1998) 17 Cal.4th 448 (*Woodell*) as authority for the proposition that Judge Stoever's comments during the oral proceedings of judgment provide this court with circumstantial evidence of the underlying conduct in the case.

14

In *Woodell*, the Supreme Court approved the use of the facts of the offense contained in the appellate opinion in the case as an appropriate method for establishing the conduct underlying an appellant's conviction. It held that the appellate opinion was part of "the record of conviction." (*Woodell*, *supra*, 17 Cal.4th at p. 457.) *Woodell* acknowledged the normal rules of hearsay generally apply to evidence admitted as part of the record of conviction to show the conduct underlying the conviction. (*Id*. at p. 458.) The court reasoned that no hearsay objection prevented the trial court's use of the statements in the appellate opinion in the case to establish the nature of the conviction, i.e., whether the basis of the conviction was the personal use of the weapon or vicarious liability for someone else who used the weapon. (*Id*. at p. 459.) The court there reasoned "[t]he appellate court's discussion of the evidence is relevant and admissible, not to show exactly what the defendant did, but to show whether the trial court found, at least impliedly, that the conviction was based on personal use rather than vicarious liability." (*Id*. at p. 460.) The court thus approved admitting the facts contained in the appellate opinion for the nonhearsay purpose of demonstrating whether the defendant was convicted of a crime based on his personal use of a weapon. (*Id.* at p. 460.)

We agree with respondent that Judge Stoever's comments during the oral proceedings of judgment, the official record of its orders of sentencing which constitute the judgment, are admissible to establish the nature of appellant's conviction. They are admissible as official records and for the nonhearsay purpose of establishing Judge Stoever found, at least impliedly, the conviction in case No. GA018917 was based on appellant's personal infliction of great bodily injury. Based on Judge Stoever's comments at sentencing, as well as the other documents in the section 969b package, the instant trial court was warranted in finding true appellant had personally committed the battery with serious bodily injury on Duke and appellant's battery conviction constituted a "serious felony." Accordingly, the offense was a "serious felony" within the meaning of section 1192.7, subdivision (c)(8), and properly used as a strike to aggravate the term of imprisonment.

15

3. *The trial court should have its clerk make further corrections to its minute order and the abstract of judgment.*

"Courts may correct clerical errors at any time, and appellate courts . . . that have properly assumed jurisdiction of cases have ordered correction of abstracts of judgment that did not accurately reflect the oral judgments of sentencing courts." (*People v. Mitchell* (2001) 26 Cal.4th 181, 185 (*Mitchell*).)  Where on appeal a party points out discrepancies of a clerical nature in the oral proceedings of  judgment and the abstract of judgment and the minute orders, it is appropriate for an appellate court to order a remand for the trial court to have the clerk correct the abstract of judgment and the minute orders. (*Id*. at p. 188.)

The trial court sentenced appellant to serve a one-year county jail term followed by a fully consecutive aggregate term in state prison of 24 years 8 months.  However, during the sentencing proceedings, it inadvertently erred by calculating the total prison term as 26 years.  The initial minute order prepared by the clerk indicated appellant's aggregate term in state prison was 26 years.  By a nunc pro tunc order, the trial court had its clerk prepare a new order with proper orders concerning the length of appellant's prison confinement.  However, that minute order, of December 20, 2012, still contains one improper notation of a "26 year jail term."  Also, the abstract of judgment prepared on December 20, 2012, states the proper term of imprisonment on its page 1 is 24 years 8 months.  However, on its page 2, under item No. 11, the abstract of judgment still improperly contains the notation, "Total sentence imposed is 26 years jail time."

These references to 26 years of total prison confinement should be stricken from the December 20, 2012, minute order and abstract of judgment.  It appears that at this point in time, the errors are merely clerical in nature and may be corrected at any time by this court or the trial court.  (See *Mitchell, supra*, 26 Cal.4th at p. 185.)  In conformity with the directions in *Mitchell*, this court will affirm the judgment and remand the matter with directions to the trial court to cause its clerk to correct the errors and to send the amended abstract of judgment to the California Department of Corrections and Rehabilitation.

16

## DISPOSITION

The judgment is affirmed.  The cause is remanded with directions to the trial court to have its clerk remove from its December 20, 2012, minute order and the abstract of judgment the statements appellant was sentenced to 26 years of total prison confinement. Thereafter, the clerk shall send the amended abstract of judgment to the California Department of Corrections and Rehabilitation.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

KLEIN, P. J.

We concur:

KITCHING, J.

ALDRICH, J.

17