Filed 6/28/24

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　　v.<br><br>CHRISTOPHER LEE COFER,<br><br>　　Defendant and Appellant. | H050122<br>(Monterey County<br>Super. Ct. Nos. 20CR010763;<br>20CR008059; 21C500245;<br>21CR001076; 21CR001243) |

Defendant Christopher Lee Cofer was sentenced at a single hearing as part of a negotiated disposition of five open cases. All of the sentences were concurrent with the six-year principal term. Relying on a previous decision by a different panel of this court in *People v. Jacobs* (2013) 220 Cal.App.4th 67 (*Jacobs*), the trial court did not award presentence custody credits in all of the cases for all of the days defendant was in actual custody. We respectfully disagree with *Jacobs* and conclude that when a defendant is sentenced concurrently at a single hearing to resolve multiple cases that were not previously the subject of a judgment of conviction or probationary disposition, Penal Code section 2900.5 requires the trial court to apply presentence credits for all periods of actual custody toward all of those concurrent sentences.

## I.　TRIAL COURT PROCEEDINGS

This case involves the award of presentence credit in five criminal cases that were resolved together. We omit the facts of the offenses as they are not relevant to the analysis and disposition of this appeal.

The information in case No. 20CR008059 ("case A") charged Cofer with vehicle burglary (Pen. Code, § 459); possession of burglar's tools (Pen. Code, § 466); driving without a license (Veh. Code § 12500, subd. (a)); and grand theft of personal property (Pen. Code, § 487, subd. (a)).  The information alleged two prior strike convictions.  (Pen. Code, §§ 667, subds. (d), (e)(1), 1170.12, subd. (c)(1).)  (Unspecified statutory references are to the Penal Code.)

Several months later, Cofer was charged by information in case No. 20CR010763 ("case B") with vehicle burglary (§ 459).  The information alleged one prior strike conviction.  (§§ 667, subds. (d), (e)(1), 1170.12, subd. (c)(1).)  Another information filed the same day in case No. 21CR000245 ("case C") charged Cofer with second degree burglary (§ 459) and vandalism under $400 (§ 594, subd. (b)(2)(A)).  That information also alleged a prior strike conviction.  (§§ 667, subds. (d), (e)(1), 1170.12, subd. (c)(1).)

Also that day, Cofer was charged by information in case No. 21CR001076 ("case D") and case No. 21CR001243 ("case E").  The information in case D charged him with second degree burglary (§ 459); possession of burglar's tools (§ 466); and possession of paraphernalia (Health & Saf. Code § 11364, subd. (a)).  The information in case D contained one prior strike allegation (§§ 667, subds. (d), (e)(1), 1170.12, subd. (c)(1)) and alleged that Cofer committed the charged offenses while released on bail or his own recognizance (§ 12022.1, subd. (d)).  The information in case E charged Cofer with second degree burglary (§ 459), and it also alleged a prior strike.  (§§ 667, subds. (d), (e)(1), 1170.12, subd. (c)(1).)

Cofer resolved all five cases by plea agreement some ten months later.[1] Consistent with the parties' agreement, the trial court sentenced Cofer to a six-year term

---

[1]  In case A, the court dismissed the prior strike allegation on the prosecution's motion and Cofer pleaded no contest to vehicle burglary in exchange for a sentence of two years, to run concurrent with the term to be imposed in case B.  In case B, Cofer pleaded no contest to vehicle burglary and admitted the prior strike allegation in

(*Continued*)

2

in case B and concurrent terms in the other cases. In case A, the court awarded presentence custody credits of 66 actual custody days and 66 days conduct credit; in case B, the court awarded 21 days of actual custody and 20 days conduct credit; in case C, the court awarded 225 days of actual custody and 224 days conduct credit; in cases D and E, the court deemed the sentences served with 183 days of actual custody and 182 days conduct credit in each.

Cofer filed a timely notice of appeal, and the trial court granted a certificate of probable cause to challenge the calculation of presentence custody credits. Cofer then moved in the trial court under section 1237.1 to correct his presentence credits. Cofer provided information with the section 12371.1 motion as to his custody status in each of the five cases:

In case A, Cofer was arrested on September 27, 2020, and remained in custody until November 10, 2020, when he posted bail and was released. He was in custody on the new charges brought in cases B and C from January 12 to January 18, 2021. When Cofer was released on his own recognizance in those cases, the court did not revoke his bail in case A. On February 13, 2021, he was arrested and remanded in cases D and E. While in custody in cases D and E, he remained technically out of custody in cases A, B, and C. On August 18, 2021, the court revoked Cofer's bail status in cases A, B, and C when it remanded him for a competency evaluation. On September 1, 2021, the court found him competent to stand trial, discharged the bail bond, and released Cofer on his

exchange for a sentence of six years. In case C, Cofer pleaded no contest to second degree burglary in exchange for a two-year term to run concurrent with the sentence in case B, and the trial court struck the prior strike allegation at the request of the prosecution. In cases D and E, the court granted the prosecution's motion to add a misdemeanor burglary charge (§ 459), and Cofer pleaded no contest to the amended counts in exchange for a one-year jail term in each case, concurrent with the term imposed in case B. Remaining counts in all cases were dismissed on the prosecution's motion, as agreed by the parties.

own recognizance in cases A and B, but ordered him to remain in custody in cases C, D, and E.  On March 25, 2022, the trial court remanded Cofer in cases A and B pending sentencing, and on March 30, 2022, the court sentenced him in all five cases.

In his section 1237.1 motion, Cofer requested an award of dual presentence credit for the time that he was on bail or on his own recognizance in cases A, B, and C while simultaneously in custody on cases D and E.  He also asked that any presentence credits in excess of the one-year sentences deemed served in the misdemeanor cases D and E be applied "to another case."

The trial court denied the request for dual presentence credits, ruling that under *Jacobs*, Cofer was not entitled to dual credits for cases where he remained on bail or on his own recognizance while in presentence custody in other cases.  The trial court awarded 15 additional days in case C and an additional 15 days in case B based on its interpretation of the records Cofer submitted in support of the motion.  The court denied Cofer's request to reduce his term of imprisonment with the credits exceeding one year in cases D and E.

## II.  DISCUSSION

Section 2900.5, subdivision (a) provides in relevant part that in "all felony and misdemeanor convictions ... when the defendant has been in custody, including, but not limited to, any time spent in a jail ... all days of custody of the defendant, including days ... credited to the period of confinement pursuant to Section 4019 ... shall be credited upon his or her term of imprisonment."  Section 2900.5, subdivision (b) states:  "For the purposes of this section, credit shall be given only where the custody to be credited is attributable to proceedings related to the same conduct for which the defendant has been convicted.  Credit shall be given only once for a single period of custody attributable to multiple offenses for which a consecutive sentence is imposed."  Applying that statute to defendant's case is a question of statutory interpretation that we review de novo.  (*People v. Gonzalez* (2017) 2 Cal.5th 1138, 1141.)

4

## A. SUPREME COURT AUTHORITIES

The Supreme Court has interpreted section 2900.5 in multiple opinions. In *In re Joyner* (1989) 48 Cal.3d 487 (*Joyner*), Joyner was charged with crimes committed in California and was later arrested in Florida for additional crimes he committed there. (*Id*. at p. 489.) After he was convicted of the Florida charges, the Florida court awarded presentence custody credit for all days Joyner spent in custody there. Joyner was thereafter convicted and sentenced to concurrent time on the California charges, with the California court denying his request for presentence custody credits. (*Id*. at p. 490.) On review, the Supreme Court identified "two purposes for awarding presentence credits: (1) eliminating the unequal treatment suffered by indigent defendants who, because of their inability to post bail, serve a longer overall confinement for a given offense than their wealthier counterparts," and "(2) equalizing the actual time served in custody by defendants convicted of the same offense." (*Id.* at p. 494.) The court observed that in resolving "presentence credit issues, our aim is to provide for section 2900.5 a construction which is faithful to its language, which produces fair and reasonable results in a majority of cases, and which can be readily understood and applied by trial courts." (*Id.* at p. 495.) The court affirmed the denial of credits, holding that "a period of time previously credited against a sentence for unrelated offenses cannot be deemed 'attributable to proceedings' resulting in a later-imposed sentence unless it is demonstrated that the claimant would have been at liberty during the period were it not for a restraint relating to the proceedings resulting in the later sentence." (*Id.* at p. 489.) The court stated that "duplicative credits against separately imposed concurrent sentences for unrelated offenses will be granted only on a showing of strict causation." (*Ibid.*)

The Supreme Court returned to section 2900.5 in *People v. Bruner* (1995) 9 Cal.4th 1178 (*Bruner*). While on parole following a robbery conviction, Bruner was arrested for multiple parole violations. Bruner possessed "a substantial quantity of rock cocaine" when he was arrested. He was cited for the cocaine possession and released on

5

his own recognizance "on that charge," while remaining in physical custody on a parole hold for the parole violations. (*Id*. at p. 1181.) Parole was revoked and Bruner was sentenced to a further one-year prison term; he received credit for the time spent in custody on the parole hold. While Bruner was serving the parole revocation term, a new information was filed charging him with cocaine possession. Bruner was convicted by plea in the new case and received a concurrent sentence; he received no presentence custody credits in the cocaine possession case. (*Id.* at pp. 1181–1182.) On review, the Supreme Court concluded that "when presentence custody may be concurrently attributable to two or more unrelated acts, and where the defendant has already received credit for such custody in another proceeding, the strict causation rules of *Joyner* should apply." (*Id.* at p. 1180.) The court reasoned that Bruner was not entitled to custody credits in the cocaine possession case because "once [Bruner] began serving a parole revocation term founded upon multiple, unrelated acts of misconduct, his custody was unavoidable on that basis regardless of the fact that he was simultaneously awaiting trial on the single criminal charge." (*Id.* at p. 1192.)

*Joyner* and *Bruner* thus involved situations where a defendant had already received presentence custody credits in another proceeding before being sentenced in the case for which he sought credit. That posture distinguishes them from this appeal, where defendant seeks presentence custody credits for all cases resolved in a single negotiated disposition and sentenced at a single hearing.

## B. INTERMEDIATE COURT INTERPRETATIONS

Two intermediate appellate decisions involved a procedural posture more similar to that presented here. In *People v. Kunath* (2012) 203 Cal.App.4th 906 the defendant was arrested for a controlled substance offense and released on bail. Kunath was then arrested while on bail and charged in a new case for a new controlled substance offense. He remained in custody until he pleaded guilty in both cases and was sentenced concurrently at a single hearing. (*Id*. at p. 909.) It is not clear whether Kunath was

remanded to custody in the first case once he was in custody in the second case, but the opinion describes Kunath as having been "in custody on both cases." (*Ibid.*) The *Kunath* court determined that where a "defendant's custody is solely presentence on all charges and he is simultaneously sentenced on all charges to concurrent terms," presentence custody credits "must apply to all charges to equalize the total time in custody between those who obtain presentence release and those who do not." (*Id.* at p. 911.) The court thus concluded Kunath was entitled to full credit in both cases for all time he spent in presentence custody.

In *Jacobs*, the defendant was arrested on suspicion of committing forcible rape. He posted bail and was released. While released on bail in the first case, Jacobs was arrested and charged in a new case with new offenses that included another forcible rape. For the next several months, Jacobs remained in custody in the second case while his custody status in the first case was noted as " 'released on bail posted.' " (*Jacobs*, *supra*, 220 Cal.App.4th at pp. 72–73.) The two cases were resolved by a "plea bargain involving both cases." (*Id.* at p. 73.) The trial court exonerated the bail bond in the first case on the date of the change of plea hearing, but Jacobs remained in custody on a " 'body only hold' " in that case until sentencing. The court granted "own recognizance" release in the second case, even though Jacobs remained in jail in the first case. (*Id.* at p. 74.) At a single sentencing hearing, the trial court imposed a prison sentence in the first case and a concurrent sentence in the second case. The trial court did not award presentence custody credits in the first case for time Jacobs remained "on bail" in that case, despite being in actual custody during that time in the second case. (*Ibid.*)

Jacobs argued he was entitled to presentence custody credit in both cases for all days spent in actual custody. (*Jacobs*, *supra*, 220 Cal.App.4th at p. 81.) Reviewing *Joyner*, *Bruner*, and *Kunath*, the *Jacobs* court interpreted "*Kunath* as holding, consistent with [section 2900.5] and with *Bruner*, that when a trial court imposes only concurrent sentences in multiple cases at the same time, a defendant is entitled to all presentence

7

custody attributable to each of the proceedings so long as that custody has not been already credited to a previously imposed sentence." (*Jacobs*, at p. 83.) But the *Jacobs* court did not believe section 2900.5 or the cases interpreting it authorized "credit for a period of custody that cannot be attributed to a proceeding." (*Jacobs*, at p. 83.) The court concluded that *Kunath*'s holding did not extend to Jacobs's situation because his on-bail status in the first case meant "his presentence custody during that period was not attributable to that proceeding." (*Id.* at p. 84.)

## C. DEFENDANT IS ENTITLED TO ADDITIONAL PRESENTENCE CUSTODY CREDIT

The parties agree that this case turns on how to interpret the first sentence of section 2900.5, subdivision (b): "For the purposes of this section, credit shall be given only where the custody to be credited is attributable to proceedings related to the same conduct for which the defendant has been convicted." The sentence is ambiguous as applied to defendant's cases.[2]

The phrase "attributable to proceedings related to the same conduct" could mean—consistent with *Jacobs* and the trial court's decision—that each criminal case must be considered a separate proceeding even if resolved and sentenced at the same time. Under that interpretation, a defendant would not receive credit in one case for time spent in actual custody in a second case if the defendant was technically "on bail" in the first case. But "attributable to proceedings related to the same conduct" could also mean that a defendant is entitled to credit in all cases that are resolved and sentenced together for all custody attributable to all conduct in those cases occurring after the defendant's

_____

[2] At our invitation, the parties submitted briefs on some of the legislative history of section 2900.5, subdivision (b), specifically a 1976 amendment which changed text in the first sentence of that subdivision from "charges arising from the same criminal act or acts" to "proceedings related to the same conduct." (Assem. Bill No. 3653 (1975–1976 Reg. Sess.) § 2.) We acknowledge the analyses offered by the parties in support of their respective interpretations. We conclude, however, that the 1976 amendment does not reveal the Legislature's intent regarding the award of credits in circumstances such as those presented here.

arrest in any given case.  Under the latter interpretation, a defendant would receive credit for all days of actual custody without regard to contemporaneous "on bail" or "own recognizance" status in any particular case.

We find the latter interpretation more consistent with the purposes of awarding presentence credit, and it is not foreclosed by any Supreme Court authority.  We have noted *Joyner's* observation that courts should aim to "provide for section 2900.5 a construction which is faithful to its language, which produces fair and reasonable results in a majority of cases, and which can be readily understood and applied by trial courts." (*Joyner*, *supra*, 48 Cal.3d at p. 495.)  Where a defendant is convicted and sentenced at the same hearing on multiple open cases, we believe it is fair and reasonable that the defendant receive credit for all days actually spent in presentence custody; those days should not be limited based on purely technical noncustodial status in any particular case. Our interpretation can be readily understood and applied by trial courts because it will reduce the need to parse actual versus technical custody status in multiple open cases. And our interpretation is not foreclosed by *Joyner* or *Bruner* because the strict causation test they describe applies "where the defendant has already received credit for such custody in another proceeding."  (*Bruner*, *supra*, 9 Cal.4th at p. 1180.)

We note that the outcome we conclude is required by section 2900.5 on these facts applies to concurrent sentences.  If a trial court elects to impose consecutive sentences, the statute specifies presentence credit "shall be given only once for a single period of custody attributable to multiple offenses."  (§ 2900.5, subd. (b).)  There is also nothing in the statute to prevent the parties from expressly addressing in a negotiated disposition whether presentence custody days will be waived or awarded in any given case.

The Attorney General argues awarding credits on all cases sentenced concurrently on the same date will result in a windfall.  He contends awarding credit for time defendant "was simultaneously in custody and on bail and his own recognizance would simply reward his criminal behavior and incentivize other defendants to engage in the

9

same while out on bail or on their own recognizance." We acknowledge defendant is an imperfect candidate for relief, and we in no way condone or ignore recidivism. But we nonetheless conclude that the result we reach here is compelled by section 2900.5. One purpose of awarding presentence credits is to eliminate unequal treatment between defendants who are versus are not able to post bail. (*Joyner*, *supra*, 48 Cal.3d at p. 494.) Here, although defendant was able to post bail in case A he was apparently unable to post bail in the later cases. Our decision ensures equal treatment between defendant and individuals who could afford bail on additional cases.

We also acknowledge that some defendants who are arrested while released on bail may seek to retain their on-bail status in an earlier case in the hope of finding sufficient resources to post bail in a later-filed case or cases. But we do not believe a defendant's decision to do so should prevent them from receiving credit for all time in actual custody when they are ultimately sentenced in multiple cases.

We agree with *Kunath* in concluding that a defendant who is simultaneously sentenced to concurrent terms in multiple open cases, where all presentence custody derives solely from those charges, is entitled to presentence custody credit toward all of those sentences. The principle applies even when, as here, a defendant is not technically in custody at all times in all cases. We do not mean to suggest, however, that a defendant would receive credit for time spent in custody before the initial arrest in any given case. (As applied here, defendant will not receive credit in case B, the principal term, for custody days from 2020 before he was arrested in that case.)

We commend the trial court for its conscientious attention to applying *Jacobs*, a published decision by a different panel of this court. With respect, both to the trial court and the previous panel, we disagree with the reasoning of *Jacobs* and decline to follow its path. We will therefore reverse and remand this matter for the limited purpose of recalculating presentence custody credits as we have described. In light of this result, we do not reach defendant's alternative argument for reversal.

10

### III.  DISPOSITION

The judgment is reversed and the matter is remanded for the limited purpose of recalculating defendant's presentence custody credits.

_____

Grover, J.

**I CONCUR:**

_____

Greenwood, P. J.

**H050122**
*People v. Cofer*

Lie, J., Dissenting:

I share the majority's belief that "it is fair and reasonable" for defendant Christopher Lee Cofer to "receive credit for all days actually spent in presentence custody" and that "those days should not be limited based on purely technical noncustodial status in any particular case." (Maj. opn., *ante*, at p. 9.) Other than its direct conflict with *People v. Jacobs* (2013) 220 Cal.App.4th 67 (*Jacobs*), I would agree as well that the rule announced by the majority today could be "readily understood and applied" by trial courts. (Maj. opn., *ante*, at p. 9.) I am obliged to disagree, however, with the majority's conviction that we may bend Penal Code section 2900.5, subdivision (b)[1] to our own sense of what is fair and reasonable—without either legislative action or the California Supreme Court's reconsideration of its own more restrictive interpretations of the legislative intent.

**I.     *Section 2900.5 and its Application***

Under section 2900.5, subdivision (a), Cofer is entitled to have "all days of custody . . . credited upon his . . . term of imprisonment." In providing that "[c]redit shall be given only once for a single period of custody attributable to multiple offenses for which a consecutive sentence is imposed," the Legislature implicitly sanctioned giving credit more than once for a single period of custody attributable to multiple offenses, so long as the sentences for those multiple offenses were concurrent. (§ 2900.5, subd. (b).) But "credit shall be given *only* where the custody to be credited is attributable to *proceedings related to the same conduct* for which the defendant has been convicted." (*Ibid.*, italics added.) In other words, "[p]ersons who remain in custody prior to sentencing receive credit against their prison terms for all of those days spent in custody prior to sentencing, so long as the presentence custody is attributable to the conduct that led to the conviction." (*People v. Duff* (2010) 50 Cal.4th 787, 793 (*Duff*).)

---

[1] Undesignated statutory references are to the Penal Code.

Unless words that are otherwise clear become "ambiguous with respect to the particular factual circumstances" of a novel application, we do not venture beyond the text and statutory context. (*Allen v. Sully-Miller Contracting Co.* (2002) 28 Cal.4th 222, 228.) I read section 2900.5 to mean that credit for a single period in presentence custody will be given against multiple concurrent sentences imposed in multiple cases, so long as the presentence custody is attributable to each of those cases.

Here, Cofer seeks presentence credit in each of cases A, B, C, D, and E, for the time he was in custody for cases D and E (and later for case C) but nominally released on bail or on his own recognizance in cases A and B. Cofer's separate criminal cases, though later sentenced together in a negotiated disposition that resulted in concurrent sentences of widely varying lengths, arose from separate acts and arrests. His presentence credits earned while in actual custody for cases C, D, and E are not "attributable to proceedings related to the same conduct for which [he] ha[d] been convicted" (§ 2900.5, subd. (b)) in cases A and B. (See, e.g., *Jacobs*, *supra*, 220 Cal.App.4th at p. 84.) So under the statute, he would not be entitled to credit in cases A or B for time accrued only in cases C, D, and E. That all cases were later sentenced in a single coordinated hearing did not retroactively change his release status in cases A, B, and C or expand the bases for his confinement in cases D and E.

This is how trial counsel and the courts have long understood section 2900.5. (See *Duff*, *supra*, 50 Cal.4th at p. 793; see also *People v. Adrian* (1987) 191 Cal.App.3d 868.) When "multiple proceedings lead[] to terms which are consolidated . . . , the 'attributable' limitation still applies. . . . [C]redits are not reallocated: they remain assigned only to the proceedings in which they were earned." (*Adrian*, at p. 877.) The statute is sufficiently clear that the typical means of avoiding the suboptimal allocation of credits would have been for Cofer to promptly seek remand in cases A, B, and C upon his latest arrest and failure to secure release in cases D and E.

2

Cofer himself understood this.  Personally protesting the court's announcement of his custody credits, Cofer volunteered:  "*I asked for my bail to be revoked* when I came in.  I had a parole hold.  So I've been here since February [2021].  And *I asked my lawyer* when I came in . . . *to revoke my bail*."[2]  (Italics added.)  Nothing in this unprompted acknowledgment of section 2900.5's limits suggests an expectation that the scheduling of his disparate cases for simultaneous sentencing might entitle him to credit in all cases for presentence custody nominally served in only some of them.

The majority finds ambiguity in the statutory language as applied to Cofer's particular predicament and suggests that "proceedings" might be the equivalent of a coordinated hearing, in which multiple cases corresponding to one defendant's unrelated offenses "are resolved and sentenced together."  (Maj. opn., *ante*, at pp. 8, 9.)  Choosing this interpretation, as the majority does, makes it unnecessary to differentiate between the five cases and Cofer's custodial status in each.

But "California courts have long recognized that the term 'proceedings' is broader than the term 'hearings.'  [Citations.]  Indeed, . . . any attempt to equate the two 'flies in the face of the ordinary meaning of "proceedings." ' "  (*Recorder v. Commission on Judicial Performance* (1999) 72 Cal.App.4th 258, 271–272.)  " '[P]roceeding' " has a "well[-]known and accepted sense as designating a form of action . . . ."  (*Thornley v. Superior Court* (1949) 89 Cal.App.2d 662, 663–664; see also *People v. Williams* (1992) 10 Cal.App.4th 827, 833 [defining " '[l]egal proceedings' " as " 'all proceedings authorized or . . . instituted in a court  . . . [for] the enforcement of a remedy' "].)

---

[2] Cofer's attorney, having earlier conveyed Cofer's objection to the calculation of credits on case B, neither confirmed nor denied Cofer's claim.  The record reflects that Cofer moved unsuccessfully for release on his own recognizance in cases D and E a month after his rearrest.  The record on appeal does not disclose whether counsel might have negotiated a disposition that would have swapped the parties' treatment of cases B and C, for example, to ensure that the case resulting in the longest of the concurrent sentences was one in which Cofer had spent substantially more time in custody.

Consistent with these authorities, "proceeding" turns on the operative charging documents that allege the criminal conduct for which the People seek punishment, not on a purely procedural decision to coordinate scheduling for multiple actions. Presentence custody is not "attributable to" hearings, only to the cases heard.

Nor is the coordination of multiple cases for sentencing a procedural innovation that invites the majority's reading of section 2900.5. Since at least *In re Joyner* (1989) 48 Cal.3d 487 (*Joyner*), had there been "*separately* imposed concurrent sentences," even the presentence custody credited in the first case(s) to be sentenced would have become unavailable to be credited to any of the later sentences, absent a showing that "the claimant would have been at liberty during the period were it not for a restraint relating to the proceedings resulting in the later sentence." (*Joyner*, at p. 489, italics added [announcing requirement of "strict causation"]; cf. *People v. Kunath* (2012) 203 Cal.App.4th 906, 908–909 (*Kunath*) [holding that, unlike " 'difficult problems' " involving separately imposed sentences, a defendant is entitled to credit against each of concurrent sentences imposed at the same time "for the time he was in custody on *both* cases" (italics added)].) In other words, had the sentence in case C been imposed first and presentence custody duly credited, the custody available to be credited to cases D and E would have been reduced by the days that Cofer had been in presentence custody on all three of these cases, and by the days between the imposition of sentence in case C and the eventual sentencing date in cases D and E. In this scenario, denominating the sentences D and E as concurrent to sentence C would not spare Cofer the obligation under *Joyner* to prove that he would have been at liberty but for cases D and E, a showing that his in-custody status in case C would defeat.

Coordination of Cofer's cases for sentencing ensured only that the trial court would credit him in each case with the days he was in custody for that particular case, even though those same days were also credited in another case or two or three—because

4

his custody was attributable to each case to be credited.  (*Kunath*, *supra*, 203 Cal.App.4th at pp. 910–911.)  But nothing in the statute authorizes more than this.

## II.    *The Supreme Court's Treatment of Custodial Status*

It is true that my disagreement with the majority turns on what it aptly terms a "purely technical" distinction in custodial status.  (Maj. opn., *ante*, at p. 9.)  And yet it is just such a technical reading of custody "attributable to proceedings related to the same conduct" that the Supreme Court imposed in *Joyner* and reaffirmed in *People v. Bruner* (1995) 9 Cal.4th 1178 (*Bruner*) when it repudiated the "relaxed causation" standard it had once espoused in *In re Atiles* (1983) 33 Cal.3d 805 (*Atiles*).  (*Bruner*, at p. 1180; see also *Joyner*, *supra*, 48 Cal.3d at pp. 494, 493 [faulting *Atiles* for going "astray" from the legislative purpose of § 2900.5].)  Indeed, the *Joyner* court "attacked" *Atiles* for having construed section 2900.5, subdivision (b)—much as the majority's interpretation does here—to "maximize the concurrency of sentences imposed in multiple proceedings." (*Bruner*, at p. 1190 [characterizing *Joyner*'s rejection of petitioner's reliance on *Atiles*]; see maj. opn., *ante*, at p. 10.)

In *Joyner*, the high court in applying its technical "strict causation" test required trial courts to deny dual credit against separately imposed concurrent sentences, even for days spent in presentence custody on both cases.  (*Joyner*, *supra*, 48 Cal.3d at p. 489.) The court found "no persuasive indication" to support interpreting section 2900.5 to implement an "equalization-of-concurrent-terms rationale."  (*Joyner*, at pp. 494–495; but see *id.* at p. 496 (dis. opn. of Broussard, J.) [criticizing majority ruling as "inconsistent with our previous interpretation of the applicable statute," "inequitable," "discriminat[ory] against indigent defendants," and bound to be "an administrative nightmare"].)  And in *Bruner*, the court interpreted section 2900.5 to deny the petitioner pretrial credits for time served in a parole revocation proceeding attributable in part to the same conduct charged in the criminal action.  (*Bruner*, *supra*, 9 Cal.4th at p. 1180.)  Even though that parole revocation would seem to meet section 2900.5's requirement of

5

" '*proceedings related* to the same conduct for which the defendant has been convicted,' " the *Bruner* court opted to construe the statutory language restrictively, for the "straightforward" fear of "bestow[ing] [a] windfall of duplicative credits . . . ." (*Bruner*, at p. 1191.) Building on *Joyner*, *Bruner* announced for the first time that section 2900.5 "is intended only to prevent inequalities in total confinement among defendants, each similarly sentenced in a *single proceeding*" and not to maximize presentence credits across multiple proceedings. (*Bruner*, at pp. 1191–1192.)

The Legislature could reasonably have disagreed with the Supreme Court's interpretation of section 2900.5. (See, e.g., Stats. 1976, ch. 1045, § 2 [replacing "charges arising from the same criminal act or acts" with the current "proceedings related to the same conduct"]; see also Sen. Com. on Judiciary, Rep. on Assem. Bill No. 3653 (1975–1976 Reg. Sess.), background information, ¶ 2 [noting the amendment would "[e]nsure that the Adult Authority no longer frustrate[s] the intent of [§] 2900.5" by denying inmates custody credit in calculating minimum parole eligibility dates].) But in the intervening decades the Legislature has perceived no need to clarify the breadth of "proceeding" or "related to the same conduct" as used in section 2900.5. (See Stats. 1996, ch. 1077, § 28; Stats. 1998, ch. 338, § 6; Stats. 2011, ch. 15, § 466; Stats. 2013, ch. 59, § 7; Stats. 2014, ch. 612, § 5; Stats. 2015, ch. 209 § 2; Stats. 2016, ch. 769, § 2.)

Nor does a looser interpretation of "attributable to proceedings" emerge from other caselaw. Of all the section 2900.5, subdivision (b) cases cited by the majority, save for *Jacobs*, it was undisputed that the custodial time for which the defendant was seeking presentence credits was attributable at least in part to the cases to be credited. (*Joyner*, *supra*, 48 Cal.3d at p. 489 [subject to a " 'hold' " for California offenses while serving a Florida sentence]; *Bruner*, *supra*, 9 Cal.4th at p. 1180 ["presentence custody . . . attributable to two or more unrelated acts"]; *Kunath*, *supra*, 203 Cal.App.4th at p. 909 [presentence credits "for the time he was in custody on both cases"].) So too in

6

*In re Rojas* (1979) 23 Cal.3d 152, 154–155 (defendant held in pretrial custody at one county's jail while serving prison sentence imposed in another county), in even the discredited *Atiles*, *supra*, 33 Cal.3d at page 807 (defendant in pretrial custody while also subject to parole hold), and in *In re Marquez* (2003) 30 Cal.4th 14, 19 (*Marquez*) (in custody in one county but subject to another county's hold). None of the cases Cofer cites in his own briefs, except *Jacobs*, involve a defendant seeking credit for days served in custody in one case against a sentence in another where he was (nominally) released on his own recognizance or on bail.

To the contrary, in *Marquez*, for example, the Supreme Court made clear that for presentence custody to be attributable to any one case, that case must be at least a *contributing* cause of a defendant's restraint when the strict causation rule of *Joyner* and *Bruner* does not apply. (See *Marquez*, *supra*, 30 Cal.4th 14, 20–21; *id.* at p. 23 [*Joyner* and *Bruner* strict causation rule applies in cases involving the possibility of duplicate credit].) The petitioner in *Marquez* was sentenced first in Santa Cruz County (where presentence credits were applied) then in Monterey County (where the 113 days from the Santa Cruz sentencing hearing to the Monterey sentencing hearing were not applied, under *Joyner* and *Bruner*), but Santa Cruz eventually vacated its sentence and dismissed its charges. Despite concluding the Santa Cruz dismissal entitled petitioner to credit for the 113-day period against the remaining Monterey sentence, the court observed that " 'dead time,' that is, time spent in custody for which [a defendant] receives no benefit" is sometimes "unavoidable." (*Marquez*, at p. 20.) The *Marquez* court's illustration of unavoidable dead time is particularly telling and supports the trial court's application of *Jacobs*: The claimed custody credits, the high court explained, would have been "attributable solely to the Santa Cruz County charges" if "Monterey County [had] never placed a hold" on the defendant for Monterey County's own charges. In such a scenario, even "dismissal of the Santa Cruz County charges would have left petitioner with no sentence against which credit for that period could be applied." (*Marquez*, at pp. 20–21.)

7

I of course recognize the *Marquez* court's no-hold illustration as dictum based on hypothetical facts, but "an intermediate appellate court . . . [does] not lightly disregard dictum from our Supreme Court."  (*Bigler-Engler v. Breg, Inc.* (2017) 7 Cal.App.5th 276, 330.)  And under section 2900.5, subdivision (b), I am unable to meaningfully distinguish the omission of a hold from the omission of a remand order in cases A and B or the delay in issuing a remand order in case C.

So remaining bound by the Supreme Court's express refusal in *Joyner* and *Bruner* to apply section 2900.5, subdivision (b) to maximize concurrency of sentences, I am unable to join the majority's fairness-based reinterpretation of the statute to equalize Cofer's concurrent terms, when our conception of what is fair and reasonable under section 2900.5 appears at odds with what our high court long ago announced.  (See *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 454.)

I respectfully dissent.

_____

Lie, J.

H050122
*People v. Cofer*

| | |
|---|---|
| Trial Court: | Monterey Co. Sup. Ct. Case Nos. 20CR010763; 20CR008059; 21CR000245; 21CR001076; 21CR001243 |
| Trial Judge: | Hon. Stephanie E. Hulsey |
| Attorneys for Plaintiff/Respondent The People: | Ron Bonta<br>  Attorney General of California<br>Lance E. Winters<br>  Chief Assistant Attorney General<br>Jeffrey M. Laurence<br>  Senior Assistant Attorney General<br>Amit Kurlekar<br>  Deputy Attorney General<br>Victoria Ratnikova<br>  Deputy Attorney General |
| Attorneys for Defendant/Appellant Christopher Cofer: | Mary Jo Strnad<br>By Appointment from the Sixth District Appellate Program |